**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**_____ DIVISION**

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 03 2009

_Mable Anthony,_

_Complainant_

_____

(Name of plaintiff or plaintiffs)

v.

CIVIL ACTION NO. 2:09-CV-132 WRW

(case number to be supplied by the assignment clerk)

_John E. Potter_

_Postmaster General_

This case assigned to District Judge _Wilson_

_United States Postal Service, Agency_   and to Magistrate Judge _Ray_

(Name of defendant or defendants)

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for

employment discrimination.  Jurisdiction is specifically conferred on the Court by  42 U.S.C.

§2000e-5.   Equitable  and  other  relief  are  also  sought  under  42  U.S.C.  §2000e-5(g).

2.      Plaintiff,  _Mable Anthony_____, is a

                                             (name of plaintiff)

citizen of the United States and resides at _909 Hwy 1 North_____,

                                                                          (street address)

_Marianna_____, _Lee_____, _AR_____, _72360_,

       (city)                           (county)                      (state)                  (ZIP)

_870-295-5309._

       (telephone)

                              _John E. Potter, Postmaster General_

3.      Defendant, _____, lives  at, or its

                                             (name of defendant)

business is located at _United States Postal Service._____,

                                             (street address)                                          (city)

_____, _____, _____,

       (county)                     (state)                         (ZIP)

4.      Plaintiff  sought  employment  from  the  defendant  or  was  employed  by  the

defendant at _____, _____,
                        (street address)                                    (city)

_____, _____, _____.
    (county)                      (state)                        (ZIP)

5.     Defendant discriminated against plaintiff in the manner indicated in paragraphs 9

and 10 of the complaint on or about __September___18_____2008_____.
                                              (month)         (day)         (year)

6.     Plaintiff filed charges against the defendant with the Equal Employment

Opportunity Commission charging defendant with the acts of discrimination indicated in

paragraphs 9 and 10 of this complaint on or about ___12_____09_____2008____.
                                                          (month)      (day)      (year)

7.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue

which was received by plaintiff on ___June___13___2009____, a copy of which notice
                                        (month)   (day)   (year)

is attached to this complaint.

8.     Because of plaintiff's (1) __✓__ race, (2) _____ color, (3)_____ sex,
                                        + Prior EEO Activities

(4) _____ religion, (5) _____ national origin, defendant:

   (a) _____ failed to employ plaintiff.

   (b) _____ terminated plaintiff's employment.

   (c) _____ failed to promote plaintiff.

   (d) The EEOC (office of Federal Operations)
failed to apply the Supreme Court's Standard for determining
adverse actions or retaliation under title VII.
   (e) The EEOC failed to investigate allegations of retaliation by
means of Harassment and retaliation. This error should be reversed.
   (f) the EEOC failed to conduct any investigation of the complaint/allegations
made Against the Agency.
   (g) the Agency failure to to investigate the allegations
by EEOC Subjected the Complainant claim to improper Analysis and
Mischaracterization and created a false Basis for Dismissal.
   (h) failed to accept a claim of discriminatory intimidation, ridicule and
insults Severe enough or pervasive enough to create a Hostile work
environment.
9.     The circumstances under which the defendant discriminated against plaintiff were

as follows: *I was subjected to discrimination on the basis of reprisal for prior Protected EEO activities under Title VII of the Civil Rights Act of 1964 from September 15, 2008 through November 4, 2008. I was harassed, threatened, and intimidated in my office in the presence of my fellow Postmasters and employees. My Character was defamed by the MPOO. My office was raided and trashed; my employees were intimidated and threatened; which created a hostile work environment. The Agency failed to investigate my claims. I was placed on Admin. leave without just cause; which in turn caused me to become depressed and placed on medication for relief.*

10.   The acts set forth in paragraph 9 of this complaint:

(a)  __X__  are still being committed by defendant.

(b)  _____  are no longer being committed by defendant.

(c)  _____  may still be being committed by defendant.

11.   Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission which charges are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

(a)  _____  Defendant be directed to employ plaintiff, and

(b)  _____  Defendant be directed to re-employ plaintiff, and

(c)  _____  Defendant be directed to promote plaintiff, and

(d)  __X__  Defendant be directed to *discontinue breaking the EEO laws discontinue retaliation against me*

and that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

*Malile Anthony*
_____
SIGNATURE OF PLAINTIFF

LAW OFFICES

# HARTLEY DAVID ALLEY

| **COLORADO** ☐ | **TEXAS** ☐ | **CALIFORNIA** ☐ |
|---|---|---|
| P.O. Box 280868 | 23107 FAIRWAY BRIDGE | 1508 W. VERDUGO AVE., # G |
| LAKEWOOD, CO 80228-0868 | SAN ANTONIO, TX 78258 | BURBANK, CA 91506 |
| PHONE: (303) 431-8060 | PHONE: (830) 438-1844 | PHONE: (818) 953-2878 |
| FAX: (830) 438-1845 | FAX: (830) 438-1845 | FAX: (830) 438-1845 |

HARTLEY DAVID ALLEY
HARTLEY@HARTLEYALLEY.COM
WWW.HARTLEYALLEY.COM

ADMITTED TO PRACTICE:
CALIFORNIA, COLORADO
(NOT ADMITTED TO TEXAS STATE BAR)

January 19, 2009

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

RE:  Mable Anthony v. John Potter, Postmaster General
     Agency Case No. 4G-720-0115-08
     Docket No. 0120090560

To the EEOC:

    Enclosed please find Appellant's Brief in Support of Appeal from Final
Agency Decision.  Thank you for your attention to this matter.

                         Very truly yours,

                         HARTLEY DAVID ALLEY
                         Attorney for Complainant

HDA/je
cc by U.S. Mail on 1/19/09: National EEO Investigative Services Office
                            P.O. Box 21979
                            Tampa, FL 33622-1979

cc:  client

**HARTLEY DAVID ALLEY**
ATTORNEY AT LAW
23107 FAIRWAY BRIDGE
SAN ANTONIO, TX  78258

$T^0$ National EEO Investigative Services Office
P.O. Box 21979
Tampa, FL 33622-1979

**HARTLEY DAVID ALLEY**
ATTORNEY AT LAW
23107 FAIRWAY BRIDGE
SAN ANTONIO, TX  78258

To  Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## OFFICE OF FEDERAL OPERATIONS

| | | |
|---|---|---|
| MABLE ANTHONY, | ) | |
| | ) | EEOC No. 490-2008-00179X |
| Complainant, | ) | OFO Doc. No. 0120090560 |
| | ) | |
| v. | ) | Agency No. 4G-720-0115-08 |
| | ) | |
| JOHN E. POTTER, | ) | |
| PMG, U.S. Postal Service | ) | Date:  January 19, 2009 |
| | ) | |
| Respondent. | ) | |
| | ) | |

### BRIEF IN SUPPORT OF APPEAL FROM FINAL AGENCY DECISION

Appellant, Mable Anthony, by her designated representative and attorney, Hartley David Alley, appeals from the Final Agency Decision (the "FAD"), issued as a Dismissal of Formal EEO Complaint, dated November 4, 2008, in Agency EEO Case No. 4G-720-0115-08.  A copy of said FAD is attached to Appellant's Notice of Appeal, dated December 5, 2008.  Appellant's formal Complaint is attached hereto as Exhibit "A".1/

Appellant requests reversal of the FAD and entry of appropriate orders requiring the Agency to investigate and process her complaint.

## I.  STATEMENT OF FACTS

### A.  Appellant's Prior EEO Activity and Officials' Knowledge Thereof

This is a retaliation case alleging: (1) acts of retaliation; and (2) harassment,

---

1. The complaint, as submitted to the agency on October 27, 2008, consisted of the formal complaint form with two attached pre-complaint forms, including an attached detailed factual statement and evidence of prior EEO activity, which complainant incorporated by reference.  It appears from the FAD the agency failed, to the prejudice of complainant, to consider all of allegations submitted.

both in reprisal for prior protected EEO activity.   Appellant, an African-American woman, engaged in prior EEO activity adverse to three of the responsible officials named in the instant complaint, Managers Mark Merritt, Chuck Hamilton, and Doug Lane.

Another of the officials named in this case, Linda Copeland, has a history of being charged with retaliation and discrimination in the Postal Service.   Appellant alleges Copeland was, at the relevant times, informed of Appellant's prior EEO activity and was acting under directions from Lane and Merritt to seek to discipline and discredit appellant.  Hamilton participated with Copeland and joined in the actions complained of in the instant case.

Appellant is the Postmaster of Marianna, Arkansas.  In 2005, she was detailed to the West Memphis Post Office.  As a result of what she observed in West Memphis, she became a witness for a class action race discrimination case (No. 4G-720-0024-06) against the Postal Service (the "West Memphis case').   See Exhibit B hereto which describes that case and the serious allegations made in it. In 2008, the OFO, in Appeal No. 0120064967, remanded the West Memphis case to the agency for processing as an individual claim.

Attached to appellant's formal complaint herein is a copy appellant's handwritten statement submitted for the West Memphis case (Exh. A, p. 14).  In her statement she describes being present at a meeting in September 2005 in which heard the West Memphis Postmaster Mark Merritt repeatedly said of the African-American clerks that all they do is "lie and steal" and that he hated them.  When appellant challenged Merritt that he did not mean that, he responded that he meant it because, per Merritt all "they" do is "lie and steal".  As shown in Exhibit "B", hereto, one of the principal allegations in the West Memphis case is that the "Postmaster openly stated that Black employees lie and steal."  Appellant further details her role as a witness in the West Memphis case on page 10 of Exhibit A. Also attached to appellant's formal complaint herein is a copy of a statement from a window clerk confirming appellant's presence at West Memphis and that she made contemporaneous statements consistent with her later testimony about "lie and steal" (Exh. A, p. 15).

The conduct complained of herein commenced on September 15, 2008 - only nineteen days after she submitted her witness statement describing Merritt's "lie and steal" claims against African-American clerks.

Appellant's handwritten statement also indicates that she informed Doug Lane of what Merritt had said about the African-American clerk employees (Exh. A, p. 14). Lane was and is the Manager of Human Resources for the entire District. Appellant also had a prior EEO complaint against management including Manager Lane, and Lane knew about it. Lane so states in an Investigative Affidavit he gave in EEO Case No. 4G-720-0028, brought by appellant against Lane and Merritt for reduction of her salary in 2008. A copy of the complaint in that case and Lane's affidavit, dated May 16, 2008, is attached hereto as Exhibit "E". See page three, item 2, of said Exhibit E. (The prior complaints by appellant which Lane references were included in Case No.4G-720-0124-07 for harassment.)

Because the agency failed to investigate the instant case, it turned a blind eye to important evidence and information. For example, in her complaint appellant alleges that "member of [Copeland's] team" was named in a prior EEO complaint by appellant (Exh. A, p. 12). Had the agency inquired, appellant would have identified that other member as Manager Hamilton. The agency would also have learned of Copeland's prior history of complaints filed against her.

Prior to coming to Arkansas, Manager Copeland worked in Florida. Attached hereto as Exhibits C and D are copies of formal complaints, dated January 16 and June 3, 2008, naming Copeland for retaliation and discrimination while in the position of Manager of Post Office Operations ("MPOO") in Florida. In the instant case, Copeland was also acting as an MPOO. The two cases, filed by the same employee, allege first that Copeland discriminated on the basis of race and age by involuntarily reassigning the employee on the basis of a claimed audit (Exh. C), and then retaliated against the employee for the first case by a non-selection and by pressuring her to drop her EEO (Exh. D, excerpted to redact details re other employees). The undersigned is informed that Copeland was reassigned from Florida to Arkansas on account of charges against Copeland for conduct including allegations involving dishonesty, and that Copeland subsequently resigned possibly with charges pending.

Based on the foregoing, it is clear that the responsible officials had motive to retaliate against appellant and further to subject her to harassment as a form of punishment and to discredit her respecting her damaging testimony in the West Memphis case.

## B.  Actions Alleged in Instant Complaint

On September 15, 2008, Copeland, Hamilton, and three other managers, appeared unannounced at appellant's Post Office and proceeded to go through appellant's office, rifling her files, and opening her mail.  It was a raid on her office, pure and simple.  Appellant, who was out on sick leave, was called by an employee who told her of what was happening and that she and the other employees were intimidated and frightened.  At the time, Copeland was acting as Appellant's immediate supervisor.  Appellant called back and requested to speak with Copeland.  Copeland refused to identify the purpose of the raid.  When appellant requested Copeland to return when appellant could be present, Copeland said, "Too bad, we are here now; just let me know when you return work – good bye."  Copeland hung up without waiting for appellant to speak further.  (Exh. A, p. 11.)

That same day, appellant received another call from a very upset clerk who described that Copeland had refused to let her leave the facility after she, the clerk, had become very disturbed.  Copeland kept the clerk there after her normal time to leave telling her "stay where you are I am not through with you."  Appellant called officials at the district, which had authority over Copeland, and requested that they intervene in the harassment and find out what was going on.  No one she spoke with said they knew what was going on, and the official in charge of Copeland did not respond or take any action to investigate the raid.   Concerned for her employees, appellant decided to go in to her office on September 15. (Exh. A, p. 11).

After arriving, appellant requested Ms. Copeland to speak with her in appellant's office.  Copeland refused and told appellant to go home.  Copeland claimed the raid involved an "audit" of some unspecified type.  Appellant repeated her request to speak to Copeland about why she was harassing the employees and what was the purpose of the claimed audit.  Copeland did not answer and instead became very upset and accused appellant of working a regular carrier on the past two Saturdays.  In the ensuing discussion appellant showed Copeland that the carrier's work and overtime were approved, to which Copeland said "Oh, I see." Copeland offered no other purported explanation for the raid except this minor issue about a single carrier.   These discussions all occurred in front of the employees.   Appellant again requested to speak with Copeland in her office. Copeland again refused and said appellant must leave until she returns from sick

leave.  Appellant then told Copeland she was requesting to return from sick leave
at that time.  Copeland said "no", and when appellant continued to request to
speak with her, Copeland responded – in front of the employees – with a most
hostile and insulting claim.  Copeland declared to all:  **"You are the worst
Postmaster I have ever met.  You have been giving the managers in the
Arkansas District a hard time for a long time, but I am here now and you
have met your match."**  (Exh. A, p. 11.)  Appellant is informed and believes
Copeland's declaration giving managers "a hard time" was a direct reference to
appellant's prior EEO activity, in particular her acting as witness for complainant
in the West Memphis case (Exh. A, p. 12).

Appellant defended her record and reminded Copeland she was one of the
better employees.  Appellant continued to ask why Copeland was there and what
was the claimed "audit" about.  Copeland continued to attack appellant in front of
her employees but did not offer any explanation other than the one carrier on
overtime issue.  Copeland began pointing fingers in appellant's face, to which
appellant told her not to do that.  Copeland then abruptly and without explanation
ordered that appellant was immediately placed on administrative leave and told her
"so get out of here."  When appellant asked for an explanation, Copeland said she
was calling the police.  Appellant asked one the managers standing with Copeland
how he could be part the "lynch mob" to which Copeland directed him not to
answer appellant.   Appellant informed Copeland she needed to call her
representative, to which Copeland responded that appellant may not call the
representative from the Post Office telephone.  When appellant indicated she
would use her cell phone, Copeland told her she could not do so and would have
to go outside to use it.  After further discussion, Copeland attempted to cover up
her irrational outbursts by suggesting that "let's just forget this happened". (Exh.
A, p 12.)  (The undersigned is also informed that there was an added incident, not
mentioned in the complaint, in which Copeland roughly jerked appellant's keys
out of her hand, which incident would be covered in an investigation of the
complaint.)

Appellant was understandably embarrassed and hurt by the hostile conduct
to which she had been subjected.  When she left the Post Office, she went to her
doctor for stress.  She returned to work briefly only to observe her office being
turned upside down for several days in an apparent attempt to find something to
charge complaint with.  (Exh. A, pp 10, 12.)  The conduct of Copeland and the
heightened scrutiny of appellant without justification are forms of prohibited

retaliatory conduct per the EEOC which lists examples of adverse retaliatory action as including "actions affecting employment such as threats, unjustified negative evaluations, unjustified negative references, or increased surveillance".

Appellant complained of harassment to Copeland's superiors, but management failed to take any effective steps to curb the actions of Copeland and her team (Exh. A., p. 10). Established agency policy requires that upon receiving a complaint of harassment by a superior, the Postal Service must take prompt action to investigate and respond appropriately. On September 18, 2008, Copeland directed appellant to meet in appellant's office with her representative. Copeland conducted the meeting as if it were pre-disciplinary interview. However, when appellant's representative asked what the charges were, Copeland refused to answer. Copeland then took appellant's badge, ordered appellant out on an indefinite involuntary administrative leave, and instructed appellant to personally call Copeland every day at 9:30 a.m. Appellant did as ordered; however on each time she called, she received Copeland's answering service until Copeland answered on October 20, 2008. On October 21, 2008, appellant found out that Copeland had been removed from the manager position early in October 2008, but that no one had contacted her as her new boss. (Exh. A, pp 10, 12, 13.) No charges were ever brought and no explanation was ever given to appellant.

While out on involuntary leave, appellant was informed that employees and persons in the community were told appellant had stolen $50,000 and was being fired. Appellant is informed and believes that management, including Copeland, initiated and published these false and defamatory statements thus causing reputational damages to appellant. Complaint was in fact intimidated and made to fear for her livelihood on account of her EEO activity. (Exh. A, p 13.)

Of importance is that Copeland never did explain the purpose of the raid or so-called audit. Attached hereto as Exhibit "F" is a copy appellant's letter, dated September 27, 2008, to Copeland requesting an explanation of the purpose of the raid. Copeland did not respond at all and has yet to explain her actions. It was only later during the counseling that appellant was informed that management had, long after the raid, claimed it was an audit for "72 and 74" functions. The agency has presented no documents or evidence of any type to substantiate the claim of such an audit. Appellant alleges this explanation is a later fabricated pretext made to cover the retaliatory function of raid. Appellant included in her complaint a critique of how the purported audit did not follow procedures (Exh. A, p. 13).

Even if the raid and extensive tossing of appellant's office was part of an actual "audit", which it was not, the abusive and intimidating manner in which the audit was conducted amounted to retaliatory conduct intended to punish appellant and deter her from testifying against the agency in the West Memphis case and from pursuing her own EEO complaints.

The agency FAD, coming after a total failure to investigate any of the serious allegations made, is most disturbing.  Under the applicable standards, the agency erred when it dismissed the complaint.  That error should be reversed.

## II.  ARGUMENT AND LEGAL AUTHORITIES

### A.  The Agency FAD Failed to Apply the Supreme Court's Standard for Determining Adverse Actions of Retaliation under Title VII.

The FAD analyzes the complaint as to whether it alleged a claim for harassment which materially "affected a term, condition, or privilege of complainant's employment."  It then concluded, based on a mischaracterization of the allegations made, that appellant had not stated a claim for hostile work environment harassment.  Based on that conclusion, the FAD then rationalized that since the allegations were not severe enough to amount to harassment, then it "is unlikely that these actions would be reasonable likely to deter protected activity".  (FAD, pp 2-4.)  It conducting the analysis this way, the agency avoided the application of the actual standard for whether there has been retaliation amounting to an adverse action under Title VII.  As this case is one for retaliation that is where the analysis should have, but did not, begun.

To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim, or engaged in opposition to discrimination (e.g. as witness).  *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. §§ 621 *et seq.*; 29 U.S.C. §§ 701 *et seq.*  In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) the U.S. Supreme Court set forth in its holding the standard for determining whether an action or retaliation was "materially adverse" under Title VII.  Specifically the Court defined "materially adverse" as an action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination") (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir.

2006))  "Adverse actions" in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim.  Due to differences in the language and purposes behind Title VII's retaliation and discrimination provisions, the Supreme Court clarified in *Burlington N.*, that the requirements are distinct.  Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment" and may extend to harms that are not workplace-related or employment related so long as "a reasonable employee would have found the challenged action materially adverse." *Id.* at 64, 68; *see also* Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law*, 1026-27 (4th ed. 2007).

Any reasonable person in appellant's shoes would have – as appellant in fact did – felt dissuaded from sticking to her testimony in the West Memphis case (that Merritt repeated stated in an a managers' meeting that the African-American clerks "lie and steal" and he hated them), and would have felt deterred from pursuing her own discrimination claims.   These are not the type of allegations that should be summarily dismissed on an FAD without investigation.

B.  The Agency failed to Conduct any Investigation of the Allegations made in the Formal Complaint.

Most important is that the agency did not conduct any investigation of the formal complaint or the allegations made therein.  This is critical since the agency, in rendering its FAD, elected to assume as false many of those allegations despite the fact they were well pleaded in the complaint.  For example, the complaint alleges with factual specificity and clarity serious incidents of intimidation and threats amounting to a claim for retaliatory harassment following on the heels of her protected EEO activity.  The agency, instead of assuming these allegations to be true for the purpose of stating a claim, disregarded or assumed as false key allegations.   This contrary to the spirit and letter of the Federal Rules of Civil Procedure which, under Rule 12, requires the allegations of a complaint to be assumed true when challenged, as here in the FAD, on the basis of a cliamed failure to state a claim.

C.  The Agency FAD Subjected the Allegations of the Complaint to Improper Analysis and Mischaracterization so as to Create a False Basis for Dismissal.

In its purported evaluation of the complaint, the FAD selects but a small fraction of the particular incidents alleged and declares these few allegations to be the sum and substance of the complaint.  After thus eviscerating the complaint, the agency FAD then considers these few allegations not as a part of harassment but as nothing more than separate, completely isolated incidents.  As to the remaining allegations, incidents, and continuing violations stated in the complaint, the FAD simply ignores them as if they were not ever pleaded at all.  This FAD sleight of hand should not be upheld.

### D.  The Complaint States a Separate Claim for Retaliatory Harassment

To prevail on a claim for harassment a plaintiff must show that his employer subjected him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)); *see also Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999). To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

Here the conduct is sufficiently severe to state a harassment claim.  As the claim is for retaliatory harassment, it must be evaluated as to whether it is sufficient to deter a reasonable employee from pursuing EEO activity.   Indeed the single act of declaring to appellant in front of her subordinate employee, **"You are the worst Postmaster I have ever met.  You have been giving the managers in the Arkansas District a hard time for a long time, but I am here now and you have met your match"**, is, standing alone, an act of harassment and of retaliation. The FAD should also be reversed as to harassment.

## III.  CONCLUSION

The Commission should reverse the FAD and order the Agency to accept the complaint on all claims, and process it accordingly.

Dated: January 19, 2008                    LAW OFFICE OF HARTLEY ALLEY

By: _____

    Hartley David Alley
    Attorney and Representative
    23107 Fairway Brg.
    San Antonio, TX 78258-7129
    (830) 438-1844; fax 830-438-1845
    email: Hartley@hartleyalley.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing BRIEF IN SUPPORT OF APPEAL FROM FINAL AGENCY DECISION, was sent this 19th day of January 2009, via U.S. Mail, first class, postage prepaid, to the following:

    National EEO Investigative Services Office
    U.S. Postal Service
    P.O. Box 21979
    Tampa, FL 33622-1979

    Mable Anthony       -     Complainant
    909 Hwy 1 North
    Marianna, AR 72360-9301

_____
Hartley David Alley

LAW OFFICES
# HARTLEY DAVID ALLEY

**COLORADO** ☐
1223 RACE ST., #1106
DENVER, CO 80206-2882
PHONE: (303) 431-8060
FAX: (830) 438-1845

**TEXAS** ☑
23107 FAIRWAY BRIDGE
SAN ANTONIO, TX 78258
PHONE: (830) 438-1844
FAX: (830) 438-1845

**CALIFORNIA** ☐
1508 W. VERDUGO AVE., # G
BURBANK, CA 91506
PHONE: (818) 953-2878
FAX: (830) 438-1845

HARTLEY DAVID ALLEY
HARTLEY@HARTLEYALLEY.COM
WWW.HARTLEYALLEY.COM

ADMITTED TO PRACTICE:
CALIFORNIA, COLORADO
(NOT ADMITTED TO TEXAS STATE BAR)

April 25, 2009

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

Via Priority Mail
Confirmation No.
0308 2040 0000 5812 9990

RE:  Mable Anthony v. John Potter, Postmaster General
      Agency Case No. 4G-720-0115-08
      Docket No. 0120090560

RECEIVED
MAY 0 1 2009
EEOC/OFO

To the EEOC:

     Enclosed please find Appellant's Request for Reconsideration of Decision.
Thank you for your attention to this matter.

Very truly yours,

HARTLEY DAVID ALLEY
Attorney for Complainant

HDA/je
Encl.
cc w/encl: National EEO Investigative Services Office
        P.O. Box 21979
        Tampa, FL 33622-1979
cc w/encl:  client

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**OFFICE OF FEDERAL OPERATIONS**

| | | |
|---|---|---|
| MABLE ANTHONY, | ) | |
| | ) | EEOC No. 490-2008-00179X |
| Complainant, | ) | OFO Doc. No. 0120090560 |
| | ) | |
| v. | ) | Agency No. 4G-720-0115-08 |
| | ) | |
| JOHN E. POTTER, | ) | |
| PMG, U.S. Postal Service | ) | Date:  April 25, 2009 |
| | ) | |
| Respondent. | ) | |

## APPELLANT'S REQUEST FOR RECONSIDERATION OF DECISION

Introduction

     Appellant, Mable Anthony, by her undersigned designated representative and attorney, requests reconsideration of the OFO Decision in the above matter, received March 27, 2009, because the Decision involved a clearly erroneous interpretation of material law and fact.

     The formal complaint alleges retaliation for complainant's prior EEO and for her participation as a witness in the investigation of another EEO complaint.  Please see Appellant's Brief in Support of Appeal, submitted January 19, 2009 ("Appellant's Brief").  A copy of the complaint was attached as Exhibit A to said brief because it appeared from the agency FAD that it failed to consider many of the allegations made and did not properly consider the attachments to the complaint.

     Complainant is a Postmaster.  As more specifically described in Appellant's Brief , and in her Declaration attached hereto, the acts of retaliation came on the heels of complainant's identification to management as a witness supporting a craft employee's racial discrimination claim.  The acts of retaliation, as alleged in the formal complaint, include without limit that complainant's immediate superior and other managers staged a fake "audit" on complainant's Post Office, engaged in threatening and assaultive conduct toward complainant, subjected complainant to

1

improper and uncalled for verbal insults in front of her staff, ejected complainant from her own Post Office on threat of calling the police, and subsequently placed complainant on involuntary leave without any justification on the pretense of an investigation when none was ever conducted. While complainant was out on leave management spread false reports that complainant has stolen money.

The involuntary leave was only rescinded after complainant's superior, a Ms. Copeland, resigned from the Postal Service pursuant to the resolution of an administrative action whereby Ms. Copeland was removed from the Postal Service for improper conduct including acts of dishonest and failure to follow procedures. As there was no reason or justification at all for the involuntary leave, the Postal Service had no choice but to grant complainant's request to return to her post.

The purported "audit" was in fact an unannounced raid. While her manager verbally suggested to complainant that an audit might or might not take place but, she failed to ever give complainant the written notice required by agency written procedures. This verbal suggestion came after complainant had requested an intervention due to harassment by the manager, something that greatly angered the manager and prompted her into action. Moreover, the manager deceived complainant by telling her no audit would take place until she decided if one would be conduct and, in that case, she would notify complainant. The notice never came. Instead, management launched the raid under the guise of an "audit" even though it was known no audit could be conducted without proper written notice.

The agency declined to investigate and dismissed the formal complaint in an FAD that contended the complaint failed to state a claim for retaliation because the acts complained of did not constitute harassment which materially "affected a term, condition, privilege of complainant's employment.' In doing so, the agency failed to apply the Supreme Court's standard for determining whether the treatment suffered by complainant was sufficiently adverse as to constitute an adverse action of retaliation under Title VII. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Moreover, in addition to complainant's own prior EEO's, her participation in the investigation of another's EEO is protected "opposition" activity under Title VII for which retaliation is prohibited. *Crawford v. Metro. Govern. of Nashville*, issued January 26, 2008, 555 U.S. ___ (2009) (See copy of opinion in *Crawford* submitted on January 27, 2009, in this appeal). The agency also committed other reversible errors which are treated in Appellant's Brief.

2

Appellant timely appealed and filed her Appellant's Brief. On March 2, 2009, the undersigned received an agency response to Appellant's Brief with a submission that included materials not in the record and which appeared to have been assembled after the notice of appeal was filed. As such these materials were matters outside the pleadings. Furthermore, the agency response sought to controvert the plain allegations of the formal complaint, e.g. that the fake "audit" was not an audit, but a raid. By this the agency response violated the rule that for purposes of OFO review of an agency FAD dismissing a formal complaint for failure to state a claim, the allegations of the complaint are deemed to be true. Upon seeing this violation, the undersigned determined that to counter what the agency claimed, it would be necessary to prepare and file a *reply with supporting evidence*. In order to preserve that right and notify OFO thereof, it would be necessary to submit a notice of intent to file said reply within a reasonable time. This appellant did.

On March 17, 2009, appellant filed her Notice of Intent to Submit a Reply to Agency Response. In the Notice, the undersigned detailed the need for a reply and expressly stated his intent to submit the reply on or by April 6, 2009. However, OFO did not respond to the notice or wait for the reply. On March 24, 2009, eleven days <u>before</u> the time for the reply, OFO issued a summary Decision affirming the FAD. There was no urgency and the Decision did not mention the Notice of Intent or explain why OFO decided to act without the reply. This left appellant with no avenue of review save seeking reconsideration.

As shown herein, the Decision was clearly erroneous. It was also issued prematurely as OFO should have waited, but did not wait, for the reply so that it could consider appellant's evidence in response to the agency's improper response that went impermissibly outside the allegations of the complaint.

This request for reconsideration demonstrates the Decision to be clearly erroneous. It also presents the evidence and argument that would have been submitted had OFO not issued its Decision prior to receipt of the intended reply.

Based on the matters presented herein and such further evidence and argument as may be later submitted, it is respectfully requested that the Commission reconsider its Decision and issue a new and different decision reversing the FAD and directing the agency to investigate all issues presented.

3

ARGUMENT

I. THE DECISION'S FACTUAL INTERPRETATIONS OF THE COMPLAINT
ARE CLEARLY ERRONEOUS. AS ALLEGED, THERE WAS NO AUDIT, NO
DISCREPANCIES WERE FOUND, AND THAT THERE WAS NO
INVESTIGATION. THE DECISION WAS THUS CONTRARY TO THE
STANDARD OF REVIEW WHICH REQUIRES THE ALLEGATIONS OF THE
COMPLIANT TO BE ASSUMED TRUE.

The Decision summarizes the compliant as alleging that there was a valid
audit which "found several discrepancies" which resulted in the "audit becoming
an investigation", and that complaint was placed on administrative leave,
apparently (the Decision does not specify the reason for the leave) due to the
investigation. This summary is completely at odds with the factual allegations of
the complaint which alleges that no audit was conducted, no findings made, and
no investigation initiated; and further that the administrative leave was not based
on any audit, investigation, or articulated reason. The evidence, including that
submitted improperly by the Agency, proves these allegations are based in fact and
cannot be assumed, as the Decision does, to be false.

The agency submitted a response to the appeal which quoted part of an
email between complainant and responsible official Copland. The agency did not
attach a copy of the email or related emails to its response and failed to inform
OFO of the text of the entire email. Attach hereto as Exhibit "5" is the entire
email and related emails. The first 2 emails on page 1, dated September 4, 2008,
set the context. The first one in time is from complainant to Teresa Peebles, an
adverse action representative, with copy to David Lambert, complainant's
Postmaster association representative, requesting an intervention due to
harassment and intimidation from manager, Linda Copeland. The second one in
time is from Theresa Peebles to complainant stating she will bring the matter up
with Ms. Copeland today, i.e. on September 4, 2008. In fact Ms. Peebles did
speak to Ms. Copeland on September 4, 2008, about the request for intervention.
On that same date, Ms. Copeland called complainant after Ms. Peebles had spoken
to her about my concerns. Ms. Copeland was very angry. She made many
statements which were confused and contradictory. For example after she said she
wanted to schedule and audit on September 15 or 16 she said it was *not an audit*
and then that is was *an audit, but not a "district audit"*. She also said she would
get back to complainant to tell whether she was doing an audit and, if so, when it

4

would take place.  Copeland did not in that discussion schedule any audit or give any notice of any actual audit to be conducted on any particular day. Complainant's email, Exhibit 5, was intended to obtain clarification on those matters.  (See attached Decl. of Mable Anthony, Para. 6.)

Copeland never responded to the email with any further communication about any audit on any day.  This is significant because attached hereto as Exhibit "6" is an email from HR clarifying that per Section 141.2, Handbook M-39, management must give advance notice written of any count to determine the efficiency of a carrier in the office.  The agency claims that Function 2 and 4 audits were performed  A Function 2 audit in the office does include counts to determine carrier efficiency and so the advance notice provision of Section 141.2 applies.  <u>Because Ms. Copeland never gave any such notice, complainant was justified in her belief and understanding that no audit had been scheduled for her office on September 15 or any other day.</u> The same procedure is required for Function 4 and written notice is required to be given to her as the Postmaster.  Consequently when Ms. Copeland and Mr. Hamilton (another responsible official) showed up at complainant's office on September 15 purportedly for an audit, it was in fact *unannounced and a surprise to her.  It was intended to surprise complainant because Copeland had deceived complainant by stating she would tell complainant when the claimed audit was to occur.* (Decl. of Mable Anthony, Para. 7.)

Additional advance notice of 5 working days, *posted in the delivery unit*, is required if the audit is to include counts of mail on one or more routes, this per Chapter 9 of Management Handbook M-41, Section 913, a copy of which is Exhibit "7" hereto.  No such notice was ever given or posted at complainant's facility.  (Decl. of Mable Anthony, Para. 8.)

Copeland and Hamilton came to complainant's office on September 15, 2008, but what they did there was *not an audit*.  The actual events are detailed in the formal complaint as described in my Appellant's Opening Brief in this appeal, at pages 4–6 of that Brief.  It was an unannounced raid intended to intimidate and frighten complainant from continuing with her participation in the investigation of another employee's EEO case, i.e. *Sharon Stewart v. Potter,* Agency No. 4G-720-0024-06 (the "Stewart Case"), and to punish her for her written statement (Exh. "1") that was given to EEO staff as part of that investigation with Ms. Stewart's August 29, 2008, Affidavit (Exh. "2").  (Decl. of Mable Anthony, Para. 2–4, 9.)

5

In fact, on September 15, 2008, during the raid, Copeland gave up any pretense that it was an "audit". As alleged in the formal complaint, Copeland loudly insulted and threatened complainant in front of her employees saying: **"You are the worst Postmaster I have ever met. You have been giving the managers in the Arkansas District a hard time for a long time, but I am here now and you have met your match"**. Copeland was referring to complainant's witness activity in the highly charged Stewart Case as "giving the managers a hard time" and that is why complainant so alleged it in the formal complaint. Complainant requested to know the purpose for the raid, and Copeland responded by ordering her on immediate administrative leave, telling her "so get out of here", and threatening to call the police. After complainant requested to call her representative, Copeland blurted out **"Let's just forget this happened"**. None of these behaviors by Copeland are part of any valid audit. Her behavior and "let's just forget this happened" show she had not intended to do any audit, was giving up on any claim it was an audit, knew she had lost all composure in her anger and had crossed the line. (Decl. of Mable Anthony, Para. 10.)

No claimed audit results were ever produced by Copeland or anyone else at the Postal Service. As the head of the facility complainant would have been provided with audit results if there had been any. However, there was no audit done. How the OFO Decision can state there that "several discrepancies" were found is incredible. No report or results of any kind, let alone "discrepancies", was ever issued or described. (Decl. of Mable Anthony, Para. 11.)

The OFO Decision says the audit "resulted in an investigation". This never happened and there is nothing in the record to show this. In the formal complaint, it is clearly alleged that on September 18, 2008, Copeland summoned complainant to appear before her with a representative. Complainant appeared with her representative as ordered. When the representative asked if it was a pre-disciplinary interview, Copland refused to answer. At no time did she say it was an investigative interview. If in fact she was conducting an investigation, this would have been the time to say so. Copeland did not, as alleged in the complaint, commence any investigation at all. Then, at the end of the meeting, Copeland took complainant's badge and ordered her to go out on administrative leave with instructions to call Copeland every day at 9:30 a.m. This order to administrative leave was not the result of any audit, findings of an audit, or investigation. It was nothing more than a naked power play intended to further intimidate and punish complainant. No justification was ever provided and after Copeland left the

District shortly thereafter, complainant was taken off administrative leave. She was not told of any investigation and was never put to any investigative or pre-disciplinary interview. This is because there was no basis at all for the administrative leave or any question about her performance or conduct. However that was not the case for Ms. Copeland. (Decl. of Mable Anthony, Para. 12.)

In March 2008, the Postal Service's Northern District in Florida (where Copeland worked before coming to Arkansas) had issued Ms. Copeland a Notice of Proposed Removal, a copy of which is Exhibit 8 hereto. The charges included Improper Conduct that Copeland engaged in pre-selection of her hand-picked candidate for an EAS vacancy, manipulated employees' pay so as to overpay her selected employee, making prohibited charges for personal expenses to her government issued credit card, and taking a postal vehicle for use in unofficial travel. The charges also included at least 3 instances of failing to report to work while in pay status. As such the charges clearly involved unethical behavior and dishonesty on Copeland's part.

On May 16, 2008, Copeland was issued a Decision to Remove her from the Postal Service, effective May 23, 2008, a copy of which Exhibit 9, hereto. The undersigned is informed that as a resolution of her removal, Copeland was allowed to take a temporary detail to the Arkansas District on condition that detail would terminate on September 30, 2008, after which she would take a down grade to a level 16 Postmaster position or resign by retirement from the Postal Service. She resigned. (For potential privacy reasons, we do here provide any copy of the resolution documents.) Copeland also had a history of retaliation as shown in Appellant's Brief, Exhs. C and D.

At the time of the events of September 15 to 18, 2008, complainant was not aware that Copeland was on her way out under the cloud of being fired for dishonesty and ethical lapses. It is now clear that Copeland was used by management in Arkansas to seek to not only intimidate complainant about her participation in the Stewart Case, but also to seek to discredit her as a witness in that case. (Decl. of Mable Anthony, Para. 14.)

## II. THE DECISION WAS BASED ON A CLEARLY ERRONEOUS INTERPRETATION OF LAW WHICH BY FAILING TO APPLY THE PROPER STANDARD FOR DETERMINATION OF AN ADVERSE RETALIATORY ACTION UNDER TITLE VII, PER *Burlington N. & Santa Fe Ry. Co. v. White,*

The Decision applies standard of whether the actions alleged constituted a harm or loss with respect to a term or condition or employment. However, this is a retaliation case and that is not, as shown above, the correct standard under *Burlington N. & Santa Fe Ry. Co. v. White, supra.*

Then, without any further analysis or explanation, the Decision asserts complainant "failed to state a viable claim of reprisal". This was completely contrary to the law and facts alleged in the formal complaint. The law is clear.

To prove retaliation, the complainant generally establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim, or engaged in opposition to discrimination (e.g. as a witness or participant in an investigation, per *Crawford, supra).* See 42 USC Sect. 2000e-3(a). In *Burlington N. & Santa Fe Ry. Co. v. White, supra.*, the U. S. Supreme Court set forth in its holding the standard for determining whether an action or retaliation was "materially adverse" under Title VII. Specifically the Court defined "materially adverse" as an action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" (quoting *Rochon v. Gonzales,* 438 F3d 1211, 1219 (D.C. Cir., 2006)

"Adverse actions" in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim. Due to differences in the language and purposes behind Title VII's retaliation and discrimination provisions, the Supreme Court clarified in *Burlington N., supra,* that the requirements are distinct and not the same. Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment" and may extend to harms that are not workplace-related or employment relates so long as "a reasonable employee would have found the challenged action materially adverse." *Id.* at 64, 68; *see also* Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law,* 1026-27 (4th Ed. 2007).

As noted above the other employee's EEO case was *Sharon Stewart v. Potter,* Agency No. 4G-720-0024-06 (the "Stewart Case"). The Stewart Case has also been the subject of an EEOC Office of Federal Operations ("OFO") Decision in OFO Appeal No. 0120064967. As alleged and as shown Appellant's Brief in Support of Appeal, submitted January 19, 2009, complainant provided a written statement in the Stewart Case, dated August 27, 2008 (see page 14 to Formal Complaint attached to Appellant's Brief), a copy of which is Exhibit 1.

8

Complainant Stewart listed this statement and attached it to her August 29, 2009, Affidavit in the Stewart Case (Exh. 2 hereto). (Decl. of Mable Anthony, Para. 2.)

The agency in its response to the appeal claims her statement and activity as a witness in the Stewart Case is not applicable since it purportedly had nothing to do with official Charles Hamilton (aka "Chuck Hamilton"), one the persons named in the instant formal complaint for retaliation as responsible officials. The agency contends, without evidence, that Mr. Hamilton was not named in any prior EEO case in which complainant was a participant. It appears from the OFO Decision in this appeal, that OFO erroneously accepted the agency's unsupported allegation despite complainant's clear proof to the contrary and clear identification of the Stewart Case. To further disprove the agency's contentions, we attached hereto additional records from the Stewart Case Record of Investigation ("ROI"). These records, as discussed below, show the agency's contentions to be completely false and likely made up from thin air for purposes of opposing the appeal.

A copy of complainant's witness statement, dated August 27, 2008, *as it appears in the Stewart Case ROI,* is attached hereto as Exhibit "1". Please note on this copy of the statement, the document No. of "00076" is the page number where the statement appears as attachment page 14 of 189 to Affidavit A in the Stewart Case ROI. A copy of said Affidavit A, which is the affidavit of complainant Sharon Stewart, dated August 29, 2008, is Exhibit "2" hereto. Note that on page 3 of Ms. Stewart's Affidavit she expressly references complainant's same written statement and further identifies "Chuck Hamilton" as having involvement in a September 22, 2005, meeting in which the Postmaster falsely accused all the black window clerk employees of lying and stealing and managers attending, including Mr. Hamilton concurred and failed to correct the racist accusation, and even laughed when complainant challenged the Postmaster on his comments. Complainant was detailed to West Memphis as the OIC. It is important to understand that the race of all window clerks at that facility at the time in question was African American. They were all black and the Postmaster there knew it.

That complainant, a Postmaster, stood up to support the discrimination claim of a craft employee is exceptional. Her statement, Exh. "1" hereto, stated in part:

On September 22, 2005, I met with Jeff Taylor . . . . Greg Tolliver. . . Mark Merritt, Postmaster . . ., Chuck Hamilton, Postmaster . . . .
Mr. Taylor asked a question to me about the VOE [Voice of the Employee]

Survey for W. Memphis.  When I answered his question Mark was very frustrated with my answer evidently, because he responded by saying that he did not care about what they (the employees) said about him because he hated the Clerks, all of them.  I stated, Mark you don't mean that.  He responded with Yes, I mean it, I hate all them, the Clerks, because all they do is "lie and steal".  I was surprised that Jeff and Gregg did not reprimand him for his remarks.  They thought his remarks were funny because they all laughed (Jeff, Gregg, & Chuck) . . . .  I previously told Doug Lane [Manager of HR] is information. . . .

That Charles Hamilton was a named alleged responsible official named in the Stewart Case is proven by the Stewart complainant's answers to agency interrogatories in the Stewart Case.  Attached hereto as Exhibits "3" and "4" are excerpts from the agency's interrogatories and Stewart's responses thereto, respectively.  The following is Interrogatory No. 4 and Ms. Stewart's response thereto:

Interrogatory No. 4.  Identify each management official who you alleged discriminated against you.

Response to 4.  Mark Merritt, PM; and the following whom complainant is informed and believes are officials involved in the discrimination or who may have ratified, joined in, acted in concert, or acted to conceal, or gave false testimony about the actions complained of:  John Gregg Tolliver, POOM; Jeffry Taylor, Dist. Mgr.; Doug Lane, Mgr. HR; Cassandra Goodman, HR official; Charles Hamilton, OIC;  and other District management level employees and staff involved in the actions complained of, or who ratified or joined therein . . . .

Mr. Hamilton is clearly identified by Ms. Stewart.

Any reasonable worker in complainant's shoes would have – a complainant in fact did – felt dissuaded by the false "audit" raid, and the accompanying hostile and threatening conduct, from sticking to her testimony in the highly charged Stewart Case, and would also have felt deterred from pursuing her own prior discrimination claims.  These are not allegations that should be dismissed on an FAD without investigation by the agency.  The FAD should be reversed.

10

Dated: April 25, 2009                    LAW OFFICE OF HARTLEY ALLEY

                                         By: _____
                                             Hartley David Alley
                                             Attorney and Representative
                                             23107 Fairway Brg.
                                             San Antonio, TX 78258-7129
                                             (830) 438-1844; fax 830-438-1845
                                             email: Hartley@hartleyalley.com

## CERTIFICATE OF SERVICE

   I certify that a copy of the foregoing **APPELLANT'S REQUEST FOR RECONSIDERATION OF DECISION**, was sent this 25th day of April 2009, via U.S. Mail, first class, postage prepaid, to the following:

   National EEO Investigative Services Office
   U.S. Postal Service
   P.O. Box 21979
   Tampa, FL 33622-1979

   Mable Anthony                          - Complainant
   909 Hwy 1 North
   Marianna, AR 72360-9301

                                          _____
                                          Hartley David Alley

**DECLARATION OF MABLE ANTHONY IN SUPPORT OF COMPLAINANT'S REQUEST FOR RECONSIDERATION OF DECISION; EEOC Appeal No. 0120090560; Agency No. 4G-720-0115-08**

Pursuant to 28 U.S.C. § 1746, Mable Anthony makes this her Declaration, and declares and states that the following is true and correct. I make this declaration at the request of my attorney, Hartley Alley.

1. I am the complainant in EEOC Appeal No. 0120090560 in which I appealed, through my attorney, the Postal Service's dismissal of my retaliation complaint (Agency No. 4G-720-0115-08) alleging retaliatory acts and harassment taken on account of my participation as a witness in another employee's EEO case and in the investigation conducted by the agency with respect thereto.

2. The other employee's EEO case was *Sharon Stewart v. Potter,* Agency No. 4G-720-0024-06 (the "Stewart Case"). I am informed the Stewart Case has also been the subject of an EEOC Office of Federal Operations ("OFO") Decision in OFO Appeal No. 0120064967. As shown Appellant's Brief in Support of Appeal, submitted January 19, 2009, to the OFO in my appeal, I provided a written statement in the Stewart Case, dated August 27, 2008 (see page 14 to Formal Complaint attached to my Brief). The agency in its response to my appeal claims my statement and activity as a witness in the Stewart Case had nothing to do with official Charles Hamilton (aka "Chuck Hamilton"), one the persons I have named in my instant complaint for retaliation as responsible officials. The agency contends, without evidence, that Mr. Hamilton was not named in any prior EEO case in which I was a participant. It appears from the OFO Decision in this appeal, that OFO improperly accepted the agency's unsupported allegation despite my clear proof to the contrary and clear identification of the Stewart Case and my

statement.   To further disprove the agency's contentions, I attached hereto additional records from the Stewart Case Record of Investigation ("ROI"), which that my attorney has recently obtained.   These records, as discussed below, show the agency's contentions to be completely false and likely made up from thin air for purposes of opposing my appeal.

3. A copy of my same written statement, dated August 27, 2008, *as it appears in the Stewart Case ROI,* is attached hereto as Exhibit "1".  Please note on this copy of my statement, the document No. of "00076" is the page number where my statement appears as attachment page 14 of 189 to Affidavit A in the Stewart Case ROI.  A copy of said Affidavit A, which is the affidavit of complainant Sharon Stewart, dated August 29, 2008, is Exhibit "2" hereto.  Note that on page 3 of Ms. Stewart's Affidavit she expressly references my same written statement and further identifies "Chuck Hamilton" as having involvement in a September 22, 2005, meeting in which the Postmaster falsely accused all the black window clerk employees of lying and stealing and managers attending, including Mr. Hamilton concurred and failed to correct the racist accusation, and even laughed when I challenged the Postmaster on his comments.  I was attending as I was detailed to West Memphis as the OIC.  It is important to understand that the race of all window clerks at that facility at the time in question was African American.  They were all black and the Postmaster there knew it.  My statement, Exh. "1" hereto, stated in part:

On September 22, 2005, I met with Jeff Taylor . . . . Greg Tolliver. . . Mark Merritt, Postmaster . . ., Chuck Hamilton, Postmaster . . . .

Mr. Taylor asked a question to me about the VOE [Voice of the Employee] Survey for W. Memphis.  When I answered his question Mark was very frustrated with my answer evidently, because he responded by saying that he

did not care about what they (the employees) said about him because he hated the Clerks, all of them. I stated, Mark you don't mean that. He responded with Yes, I mean it, I hate all them, the Clerks, because all they do is "lie and steal". I was surprised that Jeff and Gregg did not reprimand him for his remarks. They thought his remarks were funny because they all laughed (Jeff, Gregg, & Chuck) . . . . I previously told Doug Lane [Manager of HR] is information. . . .

4. That Charles Hamilton was a named alleged responsible official named in the Stewart Case is proven by the complainant's answers to agency interrogatories in the Stewart Case. Attached hereto as Exhibits "3" and "4" are excerpts from the agency's interrogatories and Stewart's responses thereto, respectively, which were provided by my attorney. The following is Interrogatory No. 4 and Ms. Stewart's response thereto:

Interrogatory No. 4. Identify each management official who you alleged discriminated against you.

Response to 4. Mark Merritt, PM; and the following whom complainant is informed and believes are officials involved in the discrimination or who may have ratified, joined in, acted in concert, or acted to conceal, or gave false testimony about the actions complained of: John Gregg Tolliver, POOM; Jeffry Taylor, Dist. Mgr.; Doug Lane, Mgr. HR; Cassandra Goodman, HR official; Charles Hamilton, OIC; and other District management level employees and staff involved in the actions complained of, or who ratified or joined therein . . . .

Mr. Hamilton is clearly identified by Ms. Stewart.

5. The OFO Decision on my appeal states as assumed facts that there was an "audit" of my Post Office and that the "audit found several discrepancies which resulted in the audit becoming an investigation and complainant was placed on administrative leave." Each and every one of these alleged facts is not supported by any evidence in the record of my complaint. *That is because there was no audit, no investigation, no report of any discrepancies, and I was not placed on administrative leave due to any audit or investigation.* I take each in turn.

6. The agency submitted a response to my appeal which quoted part of an email between myself and responsible official Copland. The agency did not attach a copy of the email or related emails to its response and failed to inform OFO of the text of the entire email. I attach hereto as Exhibit "5" is the entire email and related emails. The first 2 emails on page 1, dated September 4, 2008, set the context. The first one in time is email from me to Teresa Peebles, an adverse action representative, with copy to David Lambert, my Postmaster association representative, requesting an intervention due to harassment and intimidation from my manager, Linda Copeland. The second one in time is from Theresa Peebles to me stating she will bring the matter up with Ms. Copeland today, i.e. on September 4, 2008. In fact Ms. Peebles informed me on September 4, 2008, that she in fact did speak to Ms. Copeland on September 4, 2008, about my request for intervention. On that same date, Ms. Copeland called me after Ms. Peebles had spoken to her about my concerns. Ms. Copeland was very angry. She made many statements which were confused and contradictory. For example after she said she wanted to schedule and audit in my office on September 15 or 16 she said it was *not an audit* and then that is was *an audit, but not a "district audit"*. She also said she would get back to me to tell whether she was doing an audit and, if so, when it would take place. She did not in that discussion schedule the audit or give to me

any notice of any actual audit to be conducted on any particular day.   My email was intended to obtain clarification on those matters.

7. Ms. Copeland never responded to my email with any further communication about any audit on any day.   This is significant because attached hereto as Exhibit "6" is an email from HR to me clarifying that per Section 141.2, Handbook M-39, management must give advance notice written of any count to determine the efficiency of a carrier in the office.   The agency claims that Function 2 and 4 audits were performed   A Function 2 audit in the office does include counts to determine carrier efficiency and so the advance notice provision of Section 141.2 applies.   <u>Because Ms. Copeland never gave any such notice, I was justified in my belief and understanding that no audit had been scheduled for my office on September 15 or any other day.</u>   The same procedure is required for Function 4 and written notice is required to be given to me as the Postmaster.   Consequently when Ms. Copeland and Mr. Hamilton showed up at my office on September 15 purportedly for an audit, it was in fact *unannounced and surprise to me.   It was intended to surprise me because Copeland had deceived me by stating she would tell me when the claimed audit was to occur.*

8. Additional advance notice of 5 working days, *posted in the delivery unit,* is required if the audit is to include counts of mail on one or more routes, this per Chapter 9 of Management Handbook M-41, Section 913, a copy of which is Exhibit "7" hereto.   No such notice was ever given or posted at my facility.

9. Copeland and Hamilton came to my office on September 15, 2008, but what they did there was *not an audit.*   The actual events are detailed in my formal complaint as described in my Appellant's Opening Brief in this appeal, at pages 4–

6 of that Brief. It was an unannounced raid intended to intimidate and frighten me from continuing with my participation in the investigation of the Stewart Case, and to punish me for what my written statement (Exh. "1") that was given to EEO staff as part of that investigation with Ms. Stewart's August 29, 2008, Affidavit (Exh. "2").

10. In fact, on September 15, 2008, during the raid, Copeland gave up any pretense that it was an "audit". As alleged in my formal complaint, Copeland loudly insulted and threatened me in front of my employees saying: **"You are the worst Postmaster I have ever met. You have been giving the managers in the Arkansas District a hard time for a long time, but I am here now and you have met your match"**. It was clear to me that Copeland was referring to my witness activity in the highly charged Stewart Case as "giving the managers a hard time" and that is why I so alleged it in my formal complaint. I requested to know her purpose for the raid, and she responded by ordering me on immediate administrative leave, telling me "so get out of here", and threatening to call the police. After I requested to call my representative, Copeland blurted out **"Let's just forget this happened"**. None of these behaviors by Copeland are part of any valid audit. Her behavior and "let's just forget this happened" show she had not intended to do any audit, was giving up on any claim it was an audit, knew she had lost all composure in her anger and had crossed the line.

11. No claimed audit results were ever produced by Copeland or anyone else at the Postal Service. As the head of the facility I would have been provided with audit results if there had been any. However, there was no audit done. How the OFO Decision can state there that "several discrepancies" were found is beyond me. No report or results of any kind, let alone "discrepancies", was ever

issued or described.

12. The OFO Decision says the audit "resulted in an investigation". This never happened and there is nothing in the record to show this. In my formal complaint, I clearly allege that on September 18, 2008, Copeland summoned me to appear before her with my representative. I appeared with my representative as ordered. When my representative asked if it was a pre-disciplinary interview, Copland refused to answer. At no time did she say it was an investigative interview. If in fact she was conducting an investigation, this would have been the time to say so. Copeland did not, as I allege in my complaint, commence any investigation at all. Then, at the end of the meeting, Copeland took my badge and ordered me to go out on administrative leave with instructions to call her every day at 9:30 a.m. This order to administrative leave was not the result of any audit, findings of an audit, or investigation. It was nothing more than a naked power play intended to further intimidate and punish me. No justification was ever provided and after Copeland left the District shortly thereafter, I was taken off administrative leave. I was not told of any investigation and was never put to any investigative or pre-disciplinary interview. This is because there was no basis at all for my administrative leave or any question about my performance or conduct. However that was not the case for Ms. Copeland.

13. I am informed that in May 2008, the Postal Service's Northern District in Florida (where she worked before coming to Arkansas) had issued Ms. Copeland a Notice of Decision to Remove her from the Postal Service, effective May 23, 2008, for conduct offenses including acts of dishonesty on Ms. Copeland's part. I am further informed that as a resolution of her removal, she was allowed to take a temporary detail to the Arkansas District on condition that

detail would terminate on September 30, 2008, after which she would take a down grade to a level 16 Postmaster position or resign by retirement from the Postal Service. She has resigned. My attorney is providing these along with his submission for reconsideration of the OFO Decision in my appeal.

14. At the time of the events of September 15 to 18, 2008, I was not aware that Ms. Copeland was on her way out under the cloud of being fired for dishonesty. It is now clear to me that Copeland was used by management in Arkansas to seek to not only intimidate me about my participation in the Stewart Case, but also to seek to discredit me as a witness in that case.

15. I request the EEOC to reconsider and reverse its Decision. I ask OFO to accept the allegations of my complaint as true for purposes of its review of the Postal Service's dismissal of my retaliation complaint without accepting any issues for investigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23 day of April 2008, at Marianna, Arkansas.

MABLE ANTHONY

1

To: Whom It May Concern
Date: 8/27/08
Re: Mark Merritts Derogatory Remarks

On September 22, 2005, I met with Jeff Taylor, then Senior mpoo in the AR district, and an Exit meeting. I had been detailed in the West Memphis Post office as officer In Charge from July 18, 2005 to September 9, 2005. Present in the meeting were Greg Tolliver, mpoo 123 at that time, Mark Merritt, Postmaster, West Memphis at that time; Chuck Hamilton, Postmaster of Marion, now OIC in West Memphis; Robert Bunch, then Supervisor in W. Memphis.

Mr. Taylor asked a question to me about the VOE Survey for W. Memphis. When I answered his question Mark was very frustrated with my answer evidently, because he responded by saying that he did not care about what they are (the employees) paid about him because he hated the Clerks, all of them. I stated, Mark you don't mean that. He responded with, yes, I mean it. I hate all the Clerks, because all they do is "lie and steal". Thats all they do is "lie & steal." I was surprised that Jeff & Greg did not reprimand him for his remarks. They thought his remarks were funny, because they all laughed (Jeff, Greg, & Chuck). Robert Bunch had left the room to go to the work roomfloor. I previously told Doug Dane this information and he said it was not appropriate and told Mark and they was present after that.

Mable Anthony
Postmaster Marana AR 72360

Affidavit A
Page 14 of 169

1



| **U.S. Postal Service** | | Pag: No. | No. Pages | Case No. |
|---|---|---|---|---|
| **EEO Investigative Affidavit (Complainant)** | | 1 | 9 | 4G-720-0024-06 |

| 1. Affiant's Name (Last, First MI) | | 2. Employing Postal Facility | |
|---|---|---|---|
| Stewart, Sharon L. | | West Memphis, Ar. | |
| **3. Position Title** | **4. Grade Level** | **5. Postal Address and Zip & 4** | **6. Unit Assigned** |
| letter carrier | 6 | 615 E Cooper West Memphis Ar. 72301 | West Memphis |

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794c; and executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency to order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfil an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for the Postal Service employees and other witnesses.

**Important Information Regarding Your Complaint**

This PS Form 2569-A, EEO Investigative Affidavit (Complainant), and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO Complaints Investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, EEO Investigative Affidavit (Continuation Sheet, as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a) (7), states, in part, [t] complaint may be dismissed "where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

**7. Statement (Use Form 2569 if additional space is required)**

1. My name is Sharon Lavett Stewart

2. At all times during the EEO process my representative will be Mr. J. Pete Jordan, his address is 6 Westfield Drive, Little Rock, Ar. 72210-6941, his phone number is (501) 407-0253, email address is unknown. I am aware of my right to have representation and I chose to exercise it.

3. I do not have an email address

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's signature | Date |
|---|---|
| Sharon L. Stewart | 8-29-08 |

PS Form 2568-A, March 2001

Affidavit A
Page 1 of 189

"2"

| **UNITED STATES POSTAL SERVICE ®** | Page No. | No. Pages | Case No. |
|---|---|---|---|
| EEO Investigative Affidavit (Continuation Sheet) | 2 | 9 | 4G-720-0024-06 |

4. My race is African-American.

5. My color is black.

6. My current position is city letter carrier at the West Memphis, Ar. post office on tour two which I have had for 13 years and 10 months.

7. Same as #6 above

8. My current supervisor name is Ms. Terri Shepherd and her work phone number is (870) 735-4139 or (870) 735-0854.

9. The person who allegedly discriminated against me is Mr. Mark Merritt. His current position, work location, and phone number is unknown to me.

10. Mr. Mark Merritt was aware of my race and color because I worked with him daily and he could look at me and tell.

11. On or about the week of Sept. 26-30th of 2005, Mark Merritt made the statement to Blake Denney on the dock, telling him not to let any of those "niggers" come in the building until they have I.D. badges. They did not realize a black truck driver was in the back of his truck strapping down the mail. I have a statement from Mr. Archie Veasey (the black truck driver) who heard Mr. Mark Merritt make reference to African Americans as "niggers". Mr. Mark Merritt, (Post Master of West Memphis Post Office at that time) is responsible for the alleged discrimination.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Affidavit A | Date Signed |
|---|---|---|
| Sharon L. Stewart | Page 2 of 189 | 8-29-08 |

| | | UNITED STATES POSTAL SERVICE® | Page No. | No. Pages | Case No. |
|---|---|---|---|---|---|
| EEO Investigative Affidavit (Continuation Sheet) | | | 3 | 9 | 4G-720-0024-06 |

11(continued) Postmaster Mark Merritt openly stating that black employees lie and steal was made on Sept. 22, 2005 in a meeting at the West Memphis post office in front of Greg Tolliver, Jeff Taylor, and Chuck Hamilton. I have a written statement written by Ms. Mable Anthony (postmaster Marianna, Ar) whom he made the statement in front of. Mark Merritt is responsible for this alleged discrimination.

11(continued) Black employees were not advised of the placement of hidden cameras used to identify threves. No black employees were advised of the hidden cameras until the person was caught that was taking the money.(a truck driver) White employees was notified of the hidden cameras. They are Cindy Vinson, Terry Adams, Paul Eables, Katy Fraley, Steve Fraley, Orville Martin, Marlin Martin (all white employees) Mark Merritt is responsible for this alleged discrimination.

11. (continued) On 11-4-05 I, Sharon Stewart, asked Mark Merritt (then postmaster) why were white carriers allowed to come in early and not black carriers. He said because of their mail volume. I replied that not so because black carriers have lots, and lots of mail also. He (Mark Merritt) told me that was my opinion. I replied yes and that I was entitled to my opinion. He, (Mark Merritt) told me that if I didn't like it I know what to do and that

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | | Affidavit A | | | Date Signed |
|---|---|---|---|---|---|
| Sharon L. Stewart | | Page 3 of 169 | | | 8-29-08 |

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE.®** | | 4 | 9 | 46-720-0024-06 |

**EEO Investigative Affidavit (Continuation Sheet)**

11.(continued) if I wanted to I could file an EEO.
I replied ok. Witnesses that was in the break room
when the conversation occured was Samuel Cummings,
Sammy Young, Luther Buckingham, and Kenneth Thomas.
Mark Merritt is responsible for this alleged discrimination.
I have statements to support this allegation.

12. The reason why I believe that my race was a
factor for the incidents of alleged harassment as stated
in response #11 is because white people are not
ever referred to as niggers and because Mark
Merritt know that I am an African American.

13. The reasons why I believe that my color was a
factor for the incidents of alleged harassment as de-
scribed in question #11 is because Mark Merritt
openly said that blacks lie and steal, all they
do is lie and steal. Also his reference to blacks
as "niggers". Only white employees knew about
the cameras being installed. Only white employees
were allowed to report to work early.

14. The employees who were treated more favorably
than I where (postmaster then) Mark Merritt made
reference to blacks as niggers are "all" white employees
of the West Memphis post office. William Hill, Greg Horehey,
Paul Eables, Leroy Clay, Robert Ross, Brad Barker, Sammy
Young, Steve Fraley, Randy Passmore(lton) Keith Ashcraft,
Debbie Moore, Terry Adams, Cindy Vinson, Robert Womack, Robert

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | | Date Signed |
|---|---|---|
| Steven L. Stewart | Affidavit A Page 4 of 169 | 8-29-08 |

| UNITED STATES POSTAL SERVICE® | Page No. | No. Pages | Case No. |
|---|---|---|---|
| EEO Investigative Affidavit (Continuation Sheet) | 5 | 9 | 46-720-0024-06 |

14(continued) McAlister, Stacy Young, Katy Fraley, Shireen Fogleman, Carla May (Her), Ed Steakley, Marlin Martin

14b. Mark Merritt openly stating that black employees lie and steal makes all white employees be treated more favorable than me because they are white and I am black. They are the same names mentioned in 14a above.

14c. The employees who were treated more favorable than I that were advised of the placement of hidden cameras used to identify thieves were Cindy Vinson, Terry Adams, Paul Eables, Robert McAlister, Katy Fraley, Orville Martin, Steve Carla May Fraley. They are all white employees.

14d. The employees who were treated more favorable than I that were allowed to report to work early were Marlin Martin, Brad Barker, Steve Fraley, Terry Adams, Robert McAlister, Keith Ashcraft, Sammy Young, Robert Ross, Cindy Vinson, Ed Steakley, Leroy Clay, Bill Hill, Randy Passmore. They are all white.

15. Management's actions created a hostile work environment for me because they allowed, initiated, and provoked a hostile work environment. They never try to solve any problem which may arise because they are the problem. Respect is Reciprocal... You don't get it if you don't give it. Management are not dedicated to creating a workplace in which the rights, needs, and unique contributions of every employee

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Affidavit A | Date Signed |
|---|---|---|
| Sharon L. Stewart | Page 5 of 169 | 8-29-08 |

PS Form 2569, March 2001

00067

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE** | | 6 | 9 | 46-720-0024-06 |
| EEO Investigative Affidavit *(Continuation Sheet)* | | | | |

is consistently respected. You ask management a question and they do not respond to you. They literally ignore you.

16. Yes I informed Mark Merritt that I were being subjected to a hostile work environment harassment on 11-4-05. I told him that he's not fair. He told me that if I didn't like it that I knew what I can do. That I can file an EEO. He has made comments to the fact that nothing is going to happen to him because he and (Greg Tollner) his boss eats from the same table. He made this comment to city letter carrier Kenneth Thomas.

17. I informed Stacy Young (204B at that time) about why was white carriers allowed to report to work early and not black carriers. I asked her about this on 11-3-05. I also told her that it's not fair because blacks wanted to report early also. She informed me that it wasn't her making the decision on who reports early. She stated that postmaster Mark Merritt would tell them verbally himself or leave a note on their time card.

18. Yes there are witnesses I desire to be considered for interviews concerning the alleged hostile work environment harassment. They are Gerald Mitchell, Elizabeth (city) Royster, Kenneth Thomas, Samuel Cummings, Eric (carrier) (carrier) (carrier) Rhinehouse, Edna Stokes Vanessa Williams, Andre Brown (clerk) (clerk)

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Affidavit A | Date Signed |
|---|---|---|
| Sharon L. Stewart | Page 6 of 130 | 8-29-08 |

| Page No. | No. Pages | Case No. |
|---|---|---|
| 7 | 9 | 4G-720-0024-06 |

**EEO Investigative Affidavit (Continuation Sheet)**

18(continued) Kimberly Crockett, Hayward Shaw, Luther Buckingham, Linda Livingston. They are all employees of the West Memphis Post Office. Their home phone numbers are unknown. They can be reached at the West Memphis Post Office. (870) 735-0854 or 870) 735-4139. They can all witness a form of hostile work environment harassment. Archie Veasey (contract driver) witnessed the statement mark Merritt made about referencing blacks as niggers, His home phone number is unknown (901) 398-0803, 2044 St. James Dr. Memphis, TN. 38116. Ms. Kable Anthony (postmaster Marianna, Ar) home phone number is unknown, can provide information about Mark merritt openly saying that blacks lie and steal. He made this statement on 9-22-05 in front of Greg Tolliver, Jeff Taylor, and Chuck Hamilton. They all laughed about it.

Mark Merritt (then post master), Kenneth Thomas (city letter carrier West Memphis Post office), Luther Buckingham (city letter carrier) Sammy Young, (city letter carrier West Memphis Post office) and Samuel Cummings (city letter carrier West Memphis Post office) can witness the statement about blacks not being able to report to work early. I asked Mark Merritt about it on 1-4-05 In the break room. He said if I didn't like it that I can file an EEO.

Orville Martin, Cindy Vinson, Paul Eables, Steve Fraley, Katy Fraley, Robert McAlister, Terry Adams, Carla May

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Affidavit A | Date Signed |
|---|---|---|
| Sharon L. Stewart | Page 7 of 189 | 8-29-08 |

PS Form 2569, March 2001

00069

| | | Page No. | No. Pages | Case No. |
|---|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®** | | | | |
| EEO Investigative Affidavit *(Continuation Sheet)* | | 8 | 9 | 46-720-0024-06 |

they are all employes of the West Memphis Post office. except Carla May (place of employment unknown). They can all testify to knowing about the cameras being installed in the break room.

Melde Anthony (postmaster Marianna, Ar) also knew about cameras being installed with microphone in the 1412 office. at the West Memphis Post office. Mark Merritt was accusing Gerald Mitchell of stealing.

19. Article 2 section 1 of the National Agreement are applicable to the incidents of alleged hostile work environment harassment. Laws enforced by EEOC. Joint Statement on Violence & Behavior In the Workplace

20. I have not filed a grievance

21. I would like to add that it causes great harm to have to work for someone who considers blacks as being, stealing niggers. and nothing not be done about it. Upper management shouldn't allow this kind of behavior.

22. Yes I have statements from individuals that witnessed the acts of discrimination,

23. emotionally I have been harmed as a result of the alleged discrimination. having to work in a stressful work environment, also psychologically.

24. compensatory damages in the amount of $300,000,00, all representation fees and attorney fees if there should come to the point where an attorney is required is what I'm seeking as a resolution to this com-

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Affidavit A | | Date Signed |
|---|---|---|---|
| Sharon L. Stewart | Page 8 of 180 | | 8-29-08 |

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE** ® EEO Investigative Affidavit (Continuation Sheet) | 9 | 9 | 46-720-0024-06 |

plaint of discrimination. The district failed to remedy
a hostile work environment whereas previous com-
plaint was made by other employees of the West
Memphis Post office. All parties in management
involved at that time (2005) has been promoted.
A HEALTHY WORKPLACE!! IT'S EVERYONE'S Business
and EVERYONE'S Job.

I declare under penalty of perjury that the foregoing is true and co

Affidavit A
Page   9   of   189

Affiant's Signature: *Sharon L. Stewart*

Date Signed: 8-29-08

3

**BEFORE THE UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
MEMPHIS DISTRICT OFFICE**

| | |
|---|---|
| IN THE MATTER OF: §<br>§<br>Sharon L. Stewart, §<br>    Complainant, §<br>§<br>vs.. §<br>§<br>John E. Potter, §<br>Postmaster General §<br>United States Postal Service §<br>    Respondent Agency. §<br>§ | EEOC No.: 490-2009-00054X<br><br>Agency No.: 4G-720-0024-06<br><br>Date: February 4, 2009 |

**AGENCY'S FIRST SET OF INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:   Complainant, Sharon L. Stewart, 719 N. 14th Street, West Memphis, Arkansas, 72301 and Complainant's Representative, J. Pete Jordan, 6 Westfield Drive, Little Rock, Arkansas, 72210-6941:

The UNITED STATES POSTAL SERVICE (the Agency) by and through its undersigned counsel and designated representative, requests Complainant to answer, under oath, the following written Interrogatories and request for production of documents pursuant to 29 C.F.R. §1614.109(b).  Pursuant to the Order Authorizing Discovery, the Agency requests that you respond to its Interrogatories and Requests for Production of Documents within thirty (30) days from the date of receipt of this request. The Agency requests that you submit all responses and produce all documents to the address and/or facsimile number of the undersigned attorney.

"3"

## DEFINITIONS

A.    These discovery requests should be deemed to be continuing in nature, requiring you to submit, under oath, and by way of supplemental answer, any additional response or further information that may become known to you or your representative up to and including any hearing as set forth in Fed. R. Civ. P. 26(e).

B.    "You" or "your" means the Complainant and any person or organization, such as an attorney, spouse, representative, or organization, acting on behalf of Complainant for purposes of the matter under inquiry.

C.    "Person" means any natural person, corporation, partnership, proprietorship, trust, association, group of natural persons, or other entity of any nature whatsoever.

D.    "Document" means any written, recorded or graphic material of any kind, whether prepared by you or by any other person, which is in your possession, custody, or control.

    1.    The term "document" includes, but is not limited to: contracts; letters; telegrams; memoranda; notes; reports; studies; books; records; telephone books or messages; visitor books; calendar or diary entries; drafts; business cards; minutes of meetings, conferences, and telephone or other conversations or communications; ledgers; financial statements; photostats; microfilm; microfiche; audio, video, or other magnetically encoded recordings; and computer print-outs.

STEWART: Initial Discovery Requests
Page 2

2.   The term "document" also includes electronically or electromagnetically stored data from which information can be obtained either directly or indirectly by translation through detection devices, readers, computer programs, or electronic retrieval and the documentation necessary and sufficient to access the universe of data produced and to interpret the data.

3.   The term "document" includes the original document (or a copy thereof if the original is not available) and all copies which differ in any respect from the original or which bear any notation, marking or information not on the original.

E.   "Produce" means to produce for inspection and copying the documents called for within thirty (30) days of receipt of this request at the address of the undersigned attorney.

F.   "Identify" and all its forms means:

1.   When referring to a document, to state the type of document (e.g., letter, contract, memorandum, etc.), its date, the author(s) and addressee(s) of the document, its title, general subject matter, present location, and name and address of the custodian.  Documents to be identified shall include documents which you maintain are destroyed and with respect to which a privilege is or may be claimed.

2.   When referring to a natural person, to state his or her full name, present or last known residence and business addresses and telephone numbers,

present or last known employer or business affiliation, and present or last known position held.

3.    When referring to any entity other than a natural person, to state it's full name and the address of its principal place of business.

4.    When referring to an oral communication, to state the date upon which it occurred, identify the speaker and every other person who was present when it was made, state its substance, and identify each document which refers to, relates, in whole or in part, to said oral communication.

5.    When referring to a meeting, conference, event or occurrence, to state the date, duration, location and persons attending or participating in the meeting, conference, event or occurrence.

G.    "State" means to set forth fully and unambiguously every fact relevant to the answer called for by the interrogatory, of which you, your agents, or representatives have knowledge.

H.    "Relate to" means to make a statement about, refer to, discuss, describe, reflect, contain, constitute, identify, or in any way pertain to, in whole or in part.

I.    "Agency" and "Postal Service" both mean the United States Postal Service.

J.    The singular form of a noun or pronoun shall be considered to include the plural form of the noun or pronoun so used and vice versa.  The masculine form of a noun or pronoun shall be considered to include the feminine form and gender neutral form of the noun or pronoun so used and vice versa.

K.    "And" and "or" as used herein are terms of inclusion and not exclusion and shall be construed either disjunctively or conjunctively as necessary to bring within the

scope of the interrogatory or document request any information or document that might otherwise be construed to be outside its scope.

## INSTRUCTIONS

A.   In each instance where interrogatories are answered on information and belief, state the basis for such information and belief.

B.   With respect to each interrogatory, state whether the information furnished is within the personal knowledge of the person answering and if not, the name of all persons to whom the information is a matter of personal knowledge.

C.   Identify all persons who assisted or participated in preparing and supplying any of the information given in answer to or relied upon in preparing the interrogatories.

D.   If you refuse to produce any requested document pursuant to a claim or privilege, please submit a certified sworn statement setting forth as to each such document: (a) the date and subject matter of the document; (b) the names and business positions of its authors and addressees; (c) all persons to whom copies of the document were directed or to whom its contents were disclosed in whole or in part; (d) all persons whose signatures, initials or other notations appear on the document; and (e) the basis of the privilege claimed.

E.   If you maintain that any document or record requested or that is related to the subject matter of an interrogatory or document production request has been destroyed, set forth the content of said document, the location of any copies of said document, the date of such destruction and the name of the person who ordered or authorized such destruction.

STEWART: Initial Discovery Requests
Page 5

F.    The answers to these interrogatories are to include not only information in the possession of complainant, but also information which is available to him through his attorney(s) or his agent(s).  To the extent that the answer to any interrogatory herein is provided based on information not personally known by complainant, the answer should so state and should identify all persons from whom complainant obtained the information from which the answer is provided.

F.    Any documents relied upon by the Complainant or his attorney or representative in preparing a response to any interrogatory herein are deemed "documents" under the list of Definitions set forth above and shall be provided to the undersigned attorney.

G.    When any interrogatory contains a term included in the list of Definitions set forth above, give the term the meaning set forth for that term in the list of Definitions.

## INTERROGATORIES

1.    For each purview set forth in this complaint, state specifically all the facts and bases on which you conclude that you were the victim of intentional discrimination.

ANSWER:

2.    Identify in detail, by date and title, each and every individual with whom you sought advice, support, counseling, grievance procedures and/or sought to report the circumstances surrounding your allegations of discrimination.

ANSWER:

STEWART: Initial Discovery Requests
Page 6

3.  Identify the results, if any, for any counseling, advice or grievance procedure
    sought surrounding your allegations of discrimination.

    **ANSWER:**

4.  Identify each management official who you alleged discriminated against you.

    **ANSWER:**

5.  Identify all bases for which you claim you were discriminated against.

    **ANSWER:**

6.  State all the dates in chronological order, when you allege Mark Merritt
    discriminated against you based on your race or color.  If you do not contend that
    Mr. Merritt discriminated against you, please state this.

    **ANSWER:**

7.  State when/how you became aware that the individuals you have identified as
    Responsible Management Officials were intentionally discriminating against you.

    **ANSWER:**

8.  State how you determined the acts you complain of were discriminatory based on
    your race or color.

    **ANSWER:**



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## MEMPHIS DISTRICT OFFICE

SHARON STEWART,        )

     Complainant,      )      EEOC No. 490-2009-00054X

                  )      Agency No. 4G-720-0024-06

     v.                )

                  )

JOHN E. POTTER,        )

     Postmaster General, USPS  )      Date:  March 23, 2009

                  )

     Respondent.        )

_____

## COMPLAINANT'S RESPONSES TO AGENCY'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION

Complainant, by and through counsel, responds as follows to the interrogatories and document requests.  Objections are by the undersigned attorney.  "ROI" means Investigative Record or Record of Investigation.

Objections to Entire Set of Interrogatories, and Entire Set of Document Requests.

Objection is also made to the entire set of interrogatories and document requests on grounds it is preceded by 5 and ½ pages of confusing and complicated instructions which if the responding party attempted to interpret literally, would result in the number of discovery requests being multiplied far beyond allowable limits.  Objection is also made to the instructions as they seek actual production of documents to be made at a location that is remote and would involve unnecessary travel and expense.  To the extent documents are produced in response to the agency's discovery, they are mailed to agency counsel under separate cover.

Objection is also made to the entire set of interrogatories on ground that, given the subparts or implied subparts, the total number exceeds the maximum allowed by the Commission per it Acknowledgement and Order.

"4"

1

<u>Responses to Interrogatories</u>

1.  The responding party objects to this interrogatory on grounds it is compound, overbroad and uncertain.  However, without waiving objections, the following response is given.  Facts stated in the ROI and affidavits, attachments, statements, and exhibits thereto; and such other facts as may be obtained through investigation and discovery, including the agency's responses to complainant's outstanding discovery requests, which are ongoing.  Complainant reserves the right to supplement her response as may be necessary.

2.  The responding party objects to this interrogatory on grounds it is extremely compound, uncertain, overbroad, and appears to seek information protected by the attorney client privilege.  However, without waiving objections, the following response is given.  See ROI which contains entries and records of complainant's requests, reports, and complaints respecting the matters alleged in this action.  Investigation and discovery are continuing complainant reserves the right to supplement her response as may be necessary.

3.  The responding party objects to this interrogatory on grounds it is extremely compound, uncertain, overbroad, and appears to seek information protected by the attorney client privilege.  However, without waiving objections, the following response is given.  See ROI which contains entries and records of complainant's requests, reports, and complaints respecting the matters alleged in this action.  Investigation and discovery are continuing complainant reserves the right to supplement her response as may be necessary.

4.  Mark Merritt, PM; and the following whom complainant is informed and believes are officials involved in the discrimination or who may have ratified, joined in, acted in concert, or acted to conceal, or gave false testimony about the actions complained of:  John Gregg Tolliver, POOM; Jeffry Taylor, Dist. Mgr.; Doug Lane, Mgr. HR; Cassandra Goodman, HR official; Charles Hamilton, OIC; and other District management level employees and staff involved in the actions complained of, or who ratified or joined therein, whose identity and full capacity may not be known at this time to complainant.  Investigation and discovery are continuing complainant reserves the right to supplement her response as may be necessary.

5.  Race, Color.

2



**Anthony, Mable - Marianna, AR**

| | |
|---|---|
| **From:** | Peebles, Theresa L - Patterson, AR |
| **Sent:** | Thursday, September 04, 2008 10:40 AM |
| **To:** | Anthony, Mable - Marianna, AR |
| **Subject:** | RE: 1 APPROVED 1 DENIED |

I am meeting with her today and if possible, I will bring this issues to her.


Theresa Peebles
Postmaster
Patterson AR 72123-9999
870-731-5146

-----Original Message-----
From: Anthony, Mable - Marianna, AR
Sent: Thursday, September 04, 2008 9:29 AM
To: Peebles, Theresa L - Patterson, AR
Cc: Lambert, David E - Glenwood, AR
Subject: FW: 1 APPROVED 1 DENIED
Importance: High

Theresa I spoke to David lambert this morning regarding the intimidation I feel that has been coming from Ms. C regarding my office. See the messages below. She responded that I need to call her- When I talk to her on the phone she talks down to me and make me feel intimidated. This is why I need intervention with her. I have been a Postmaster for a long time and I know that I am a good "Arkansas Postmaster". But I do not do well under threats and intimidations. I do not make threatening remarks to her- I am telling her facts-I feel intimidated and I feel that something should be done to stop her threatening remarks and tell me why my office is targeted for failure. I do not have an Overtime issue with the clerks or carrier crafts.

David told me you are meeting with Ms. C today-Please ask her to discontinue instructing me to break contracts by changing the schedules for the craft employees just because I request TOOT when needed to keep Overtime down in both crafts and to serve the community in which I have been given charge.


Theresa, please give me your office phone number. I am unable to get it on the 1800 line.

Thanks

Mable Anthony, Postmaster
Marianna AR 72360-9998
870-295-5309



----Original Message-----
From: Copeland, Linda A - Little Rock, AR
Sent: Wednesday, September 03, 2008 5:14 PM
To: Anthony, Mable - Marianna, AR
Cc: Cox, Douglas D - Greenbrier, AR; Lambert, David E - Glenwood, AR
Subject: RE: 1 APPROVED 1 DENIED

Ms Anthony
I asked you for you to contact me by phone instead of writing these epistles on more than one occasion and that is what I need you to do. Please do not make threatening remarks be professional and please follow my instructions and I will be happy to help you.

Thanks

1

"5"

Anthony, Mable - Marianna, AR

| | |
|---|---|
| From: | Anthony, Mable - Marianna, AR |
| Sent: | Friday, September 05, 2008 7:23 AM |
| To: | Copeland, Linda A - Little Rock, AR |
| Cc: | Peebles, Theresa L - Patterson, AR; Lambert, David E - Glenwood, AR; Cox, Douglas D - Greenbrier, AR; Campbell, Wallace J - Malvern, AR |
| Subject: | Phone conversation follow-up |
| Importance: | High |

*No response* (handwritten, left margin)

Ms. Copeland

To follow-up with our phone conversation on yesterday: I want to be professional about these issues-I need you to instruct me in writing exactly what you want me to do and please explain the reasons for your actions in my office.

- You phoned me approximately 6:30 Pm and informed me that you are scheduling a F4 and F 2 Audit in my office for two days-Is this correct ( the 15th and 16th of September)?; You stated that this is not a District Audit) Is this correct?

- You stated that this is Area 5 Audit? Is this correct?

- You also stated that you had contacted Helena to borrow a PTF for my office for Saturday-because you have denied my regular carrier to work his day off on Saturday but you have approved one of my regular carriers' to work on Monday on her day off? Is this correct?

Ms. Copeland, is these audits you have planned for my office based on negative data regarding my office that you can share with me? I shared with you data from a recent flash on my office and I did not see anything that was negative enough to warrant a full audit of my office. My office just recently went through a minor route adjustment. I stated that I believe that my office is one of your best ran office in this area. If you have something different please share it with me.

I believe that the only thing that I have requested from you, since your tenure, is for my carrier or clerk to work on their day off when ever an emergency arise or when one is on annual leave. Do you agree? If this is the only reason you are targeting my office for audits it is unfair-unless you are targeting other offices in this area because they have requested to work their regular employees on their day in an emergency or scheduled leave. You have stated that I have my employees sheduled wrong-please be specific and let me know what you want me to do.

I will notify my employee's in writing as soon as I can get your instructions until then I will put a hold on any written instructions to my employees.

Thanks,

Mable Anthony, Postmaster
Marianna AR 72360-9998
870-295-6309

*NO response — no written information for 10-Days — I made a Doctors appointment — Took sick leave. I was Totally diserst Was not expecting an audit, investigation or Anything at this time* (handwritten)

*Mable Anthony* (handwritten signature)

*My office was not audited it was Raided.* (handwritten)



**Anthony, Mable - Marianna, AR**

| | |
|---|---|
| **From:** | Wilson, Dennis K - Stuttgart, AR |
| **Sent:** | Friday, March 27, 2009 3:37 PM |
| **To:** | Anthony, Mable - Marianna, AR |
| **Subject:** | Answer to Question |

## 141.2 Special Office Mail Counts

When management desires to determine the efficiency of a carrier in the office, a count of mail may be made. The carrier must be given one day's advance notification of this special count. Use Form 1838-C to record count and time items concerned. The carrier must be advised of the result of the office mail count.

On Page 60 of Handbook M-39.

*Dennis Wilson*
*HR Generalist (A)*
501-945-6661
Cell: 501-412-4739
Fax: 650-577-2874

"6"

1

7

# 9 Mail Count and Route Inspection

## 91 Introduction

### 911 Definition and Purpose

911.1 Count of mail is the physical counting and recording of the number of pieces of mail delivered or collected on a city delivery route.

911.2 The count of mail is used to gather and evaluate data to adjust routes fairly and equitably to insure that the workload for each route will be as near as possible to an 8-hour workday for the carrier.

911.3 The data obtained during the count and inspection period, along with current management records, and the manager's knowledge of the route, are the basis for making route adjustments.

### 912 Frequency

Counts of mail shall be conducted on one or more routes when it is determined to be operationally necessary. These inspections will be conducted between the first week of September and May 31, excluding December. A physical inspection of the route shall be made on one or more days during the count week by a route examiner who accompanies the carrier during his or her full tour.

### 913 Advance Notice

A notice giving schedule of a count week and proposed day of inspection for each route shall be posted at the delivery unit not later than 5 working days preceding start of count. One day's advance notice will be given if a decision is made to inspect on days other than the scheduled date.

### 914 Absences

Absences, for other than emergency, will not be granted during the week of count and inspection.

"7"

91

### 915  Inspection Day

In order that a fair and reasonable evaluation may be made by management, carriers must perform their duties and travel their routes in precisely the same manner on inspection day as they do throughout the year.

### 916  Cancellations

**916.1**  When continuation of any inspection would serve no useful purpose, the inspection may be canceled, at management's discretion. A cancellation may apply to an entire delivery unit or to one or more routes of a group of routes being inspected.

**916.2**  Some items which could bring about consideration for cancellation are:

    a.    Natural disasters or extreme weather conditions.

    b.    Unscheduled extended absence of the full-time carrier coupled with the absence of a qualified replacement. To the extent reasonable and practicable, the regular carrier assigned to the route shall undergo the inspection.

    c.    Unrealistic mail volume, either abnormal or subnormal, which could prohibit a fair evaluation of the route(s).

    d.    Unavailability of transportation for carriers.

**916.3**  Any cancellation made will be discussed with carrier(s) concerned, giving the reasons for the cancellation. When the cancellation is for the entire unit, the discussion will be with the unit steward(s).

### 917  Dry-Run Count

**917.1**  A review of count procedures shall be made within 21 days prior to the start of the count and route inspection.

**917.2**  The sample dry-run count items, forms, and completion instructions are furnished to each carrier concerned early enough to assure that the dry-run can be completed and reviewed before scheduled count and inspection period.

**917.3**  An instruction period is held following issuance of the dry-run materials but before completion of the dry-run exercise.

**917.4**  A manager will review each completed dry-run form for accuracy. Errors and/or omissions are discussed and explained to the carrier. When necessary, the manager may require a second completion of the form to assure that the carrier is thoroughly familiar with its completion.

### 918  Special Route Inspections

### 918.1  When Required

Special route inspections may be required when any of the following conditions or circumstances is present:

92                                                          Handbook M-41, TL-4, 03-01-98

a. *Consistent use of overtime or auxiliary assistance.* (When X-Route concept is utilized and routes may be "built up" to no more than 8 hours and 20 minutes during interim period, see Memorandum of Understanding dated September 17, 1992.)

b. *Excessive undertime.*

c. *New construction or demolition which has resulted in an appreciable change in the route.*

d. *A simple adjustment to a route cannot be made.*

e. *A carrier requests a special inspection and it is warranted.*

f. *Carrier consistently leaves and/or returns late.*

g. *If over any 6 consecutive week period (where work performance is otherwise satisfactory) a route shows over 30 minutes of overtime or auxiliary assistance on each of 3 days or more in each week during this period, the regular carrier assigned to such route shall upon request, receive a special mail count and inspection to be completed within 4 weeks of the request. The month of December must be excluded from consideration when determining a 6 consecutive week period. However, if a period of overtime and/or auxiliary assistance begins in November and continues into January, then January is considered as a consecutive period even though December is omitted. A new 6 consecutive week period is not begun.*

h. *Mail shall not be curtailed for the sole purpose of avoiding the need for special mail counts and inspections.*

### 918.2  Manner in Which Conducted

When special inspections are made because of conditions mentioned in 918.1, they shall be conducted in the same manner as the annual count and inspection.

# 92  Letter Routes

## 921  Basic Requirements

### 921.1  Coverage

**921.11**  For the purpose of mail counts, all classes of mail available to the carrier (see section 921.13) must be routed and delivered every day of the count period.

**921.12**  Each replacement carrier assigned to regular, full, and part-time routes shall count the mail and enter the data on the prescribed forms in the same way as the full-time carrier.

**921.13**  The mail of all classes available to the carrier is (a) that mail distributed and placed on carrier case ledges, in hampers, trays, or on the floor beneath the carrier case, and (b) that mail which is in distribution cases up to the cut-off or final withdrawal time prior to departure to serve the last delivery trip of the

week of count. This does not include the mail distributed following the
scheduled cut-off or final withdrawal time.

### 921.2  Schedule

**921.21**  The count of mail period on all letter delivery routes, both regular and
auxiliary, shall be (a) for 6 consecutive delivery days on one-trip routes and
(b) for 5 consecutive delivery days, exclusive of Saturday, on multi-trip routes
or one-trip routes with abbreviated or no delivery on Saturday.

**921.22**  It is not mandatory that mail counts begin on Monday and continue through
Saturday but they must be made on consecutive delivery days.

**921.23**  Not later than the Wednesday preceding the count week, carrier schedules
shall be posted for those routes requiring an earlier starting time to count the
mail.

### 921.3  Casing Mail by Carrier

Do not case any mail on return to the office on the day before the first day of
the count period. However, if you are regularly scheduled throughout the year
to case mail on return from the street, continue to do so during the count
period; but do not case any mail for delivery after returning from the street on
the last day of the count period *until* you have rung off the Form 1838-C
worksheet for the day. (For exceptions, see instructions for expedited
preferential mail delivery, part 924.)

## 922  Form 1838-C Worksheet — Preparation

### 922.1  Use of Form

**922.11**  The count of mail is recorded on Form 1838-C (see exhibit 922.11 (p. 1, 2, 3,
and 4)).

**922.12**  Use a separate form to record each day's count. Make and record the count
on the worksheet in duplicate (using carbon paper) — except on the day of
inspection when the count is made and recorded, in duplicate, by the route
examiner or manager making the route inspection. In cases where it is not
practicable for you to report early enough to make the count, it may be made
by the manager or other competent employee.

**922.13**  The worksheet is used to record preliminary data for totaling and later
transfer to Form 1838 by management. Lines on the worksheet correspond
with lines on Form 1838. Space is provided for entering starting and ending
time of all actual time items which are included or excluded from net and/or
standard office time allowances. In addition, notations and comments
pertaining to the mail count or route conditions should be made on the
worksheet which will be helpful in later preparing the summary and making
proper and realistic route adjustments. Report unusual conditions under
Carrier's Comments. If this space is inadequate, enter additional comments
on blank side of Form 1838-C.



MANAGER, POST OFFICE OPERATIONS

 **UNITED STATES POSTAL SERVICE**

March 31, 2008

MEMORANDUM FOR:   LINDA COPELAND



SUBJECT:          Notice of Proposed Removal

This is advance written notice that it is proposed to remove you from the Postal Service no sooner than 30 calendar days from the date of your receipt of this letter.

### CHARGE NO. 1: IMPROPER CONDUCT

Specification 1

You have engaged in inappropriate EAS selection methods for job promotions.

On January 22, 2008, you were contacted by the District Manager, Human Resources, Sylvia Morris, regarding vacant level 20 offices available for placement of the three MAP candidates. You indicated that all the vacancies had been filled with the exception of Defuniak Springs. You further indicated that OIC Gabriel Rojas needed to remain in Defuniak Springs and that the office was not suitable for an inexperienced MAP candidate. You stated that the Postmaster in Defuniak Springs was retiring effective February 29 and that Mr. Rojas would move into that job, freeing up his current job in Destin Miramar for the MAP candidate. Mr. Rojas is currently a Level 19 Manager, Customer Services in Miramar and not eligible for a non-competitive transfer to the Level 20 Postmaster position. You pre-determined that you would select Mr. Rojas for the position before it was vacant and posted for application.

Specification 2

You attempted to manipulate the PFP in order to give a subordinate postmaster a higher raise to compensate for a previously promised pay raise.

You selected former Lucedale, MS Postmaster Jerry K. Wieck as Postmaster, Gulf Breeze, FL in April 2007. You committed to Mr. Wieck that he would receive a 10% pay raise instead of the normal maximum 6%. Mr. Wieck was transferred to Gulf Breeze but only received an 6% pay raise. You gave Mr. Wieck a $1,340 Spot Award to make up the difference between the 6% and 10% pay raise for 2007. You instructed Mr.

800 BILL FRANCE BOULEVARD
DAYTONA BEACH, FL 32114-9998

DISC

*"8"*

Wieck to change his Pay for Performance (PFP) core requirements to lower the goal numbers which would result in his receiving a higher percentage pay increase for 2008.

**Specification 3**

On February 1, 2008, I became aware that on October 6, 2005, you borrowed a postal vehicle to travel with 4 of your subordinate postmasters from Pensacola to Jacksonville on unofficial business to attend the funeral of another subordinate employee's son. In addition, you made charges for gas for the postal vehicle on the Voyager credit card.

The Postal Service paid a total of $173.37 for gas for you and your postmasters to travel for personal reasons. You signed for gas purchases of $88.72 and $10.01, charged to the Voyager credit card for this trip. Your subordinate Postmaster Harold Gebhart signed for one gas purchase for $34.64.

## CHARGE NO. 2: FAILURE TO REPORT TO A WORK LOCATION WHILE IN A PAY STATUS

On at least three occasions, you failed to report to any work location while in a pay status.

You were scheduled to report to work in Fort Walton Beach on January 24, 2008. You did not report to Fort Walton Beach on January 24, January 25 or January 30. Further, you did not report to your office in Pensacola and could not provide the names of any postmasters whose offices you visited on those days.

## CHARGE NO. 3: FAILURE TO FOLLOW INSTRUCTIONS

You failed to follow clear and specific instructions from District Manager James A. Nemec, to report to the Ft. Walton Beach Post Office effective January 24, 2008.

During the weekly telecom on January 23, 2008, District Manager James Nemec instructed you to report to the Fort Walton Beach Post Office each day for the next two weeks, effective January 24, 2008. You did not report on January 24, January 25 or January 30, 2008 as instructed.

I have met with you at least twice in person and spoken to you on the telephone and corresponded through email on numerous occasions regarding your failure to follow my instructions to personally provide timely responses to me.

On January 23, 2008, you failed to provide a timely report on late box section hot case mail in your offices. You had delegated this task to a subordinate postmaster.

You failed to send me your weekly schedule as instructed for the week of January 26-February 1, 2008. You had delegated this task to your secretary.

You delegated the following items to a subordinate postmaster in spite of instructions that you are to personally perform tasks for which you are responsible:

- Drafting budget projections
- Moving Baker Postmaster from OIC position back to Postmaster position

2

- Moving Supervisors Lanning and Kolmetz
- Drafting Performance Improvement Plan for another Postmaster
- Fulfilling documentation requests from NAPUS
- Participating in telecoms with plant and for budget, facilities, complement, DOIS performance and December mailings
- Monitoring all-clear reporting issues

I believe the charges against you are fully supportable and warrant your removal from the Postal Service. You have destroyed the trust necessary to retain you.

You and/or your representative may review the material relied on to support the reasons for this notice at my office, Monday-Friday from 8 a.m. to 3 p.m. If you do not understand the reasons for this notice, contact me for further explanation.

You and/or your representative may answer this proposal within 10 calendar days from the date of your receipt of this letter either in person or in writing, or both, to Arthur A. Rosenberg, Postmaster, 1100 Kings Road, Jacksonville, FL 32203-9998. You should call Mr. Rosenberg at (904) 366-4896 in advance between the hours of 8 a.m. and 3 p.m. to make arrangements for any in-person meetings. You also may furnish affidavits or other written material to Mr. Rosenberg within 10 calendar days from your receipt of this letter. You will be afforded a reasonable amount of official time for the above purpose if you are otherwise in a duty status. After the expiration of the 10-day time limit for reply, all the facts in the case, including any reply you submit, will be given full consideration before a decision is rendered. You will receive a written decision from Mr. Rosenberg within sixty (60) calendar days of receipt of your response.

A copy of this letter is being sent to your home address by ordinary mail.

Randolph L. Scott

RECEIVED BY EMPLOYEE: _____   DATE: _____

TIME: _____



POSTMASTER

**UNITED STATES**
**POSTAL SERVICE**

May 16, 2008

MEMORANDUM FOR   LINDA COPELAND        Certified #7002 3450 0001 4402 1706
                                       Return Receipt Requested

                                       Express Mail EB 713888536 US

SUBJECT:        Letter of Decision

You were issued a Notice of Proposed Removal dated March 31, 2008, based on the charge as outlined in the notice.

You were given the opportunity to address or provide a response to these charges to me either personally or in writing, or both. I note that you did not reply in person, however, your representative, Jaime Chacon, responded to me by telephone on May 14, 2008. I have given full consideration to your representative's response, as well as the evidence of record. You did not participate in the phone conversation.

Your representative's only response to the charges against you was that you vehemently deny all the charges. I find that this denial is belied by the evidence of record.

I find that the transcript of the phone message you left for Manager, Human Resources Sylvia Morris on January 30, 2008, as well as Ms. Morris's written statement of February 11, 2008, clearly show that you attempted to engage in inappropriate EAS selection methods in order to place Gabriel Rojas in the postmaster position in Defuniak Springs, Florida. I find that in spite of conversations you had with Ms. Morris in late 2007, regarding a similar issue, you continued to engage in manipulation of the selection system. I find that you have been fully trained and counseled in EAS selection methods. I find this to be of a particularly egregious nature for a person in your position with responsibility for selection of postmasters in various level offices. I find that your actions compromised the integrity of the selection system.

I find that you attempted to manipulate the Pay for Performance (PFP) system in order to compensate for a previously promised pay raise for a subordinate postmaster. I find that Postmaster Jerry K. Wieck's statement and your own end-of-year comments on Mr. Wieck's evaluation clearly support this specification. You wrote, "Outstanding job not only did he accomplish so much in a few months this past FY there was a mistake made in his % coming here. He forego relocation and was to receive a 10% increase to come but a glitch took place and only received 8%. I tried to go back and have it corrected but you cannot change it. The only to compensate him and have the 2% added to his salary which could not be done in a spot award is to give him what he has earned and deserves at this time. His performance definitely warrants an exceptional contributor on his cores and that is what I recommend." [sic] Mr. Wieck's actual final end-of-year rating was a "10," or high contributor.

I find that the records indisputably show that you and your subordinate postmaster charged gas for a personal trip from Pensacola to Jacksonville to the Postal Service Voyager credit card in 2005. Management did not become aware of this incident until February 2008.

1100 Kings Road
Jacksonville, FL 32203-9098

DISC

"9"

-3-

regulations (29 CFR Section 1614.302 through 1614.310). You are not entitled to a hearing by the Equal Employment Opportunity Commission (EEOC). You may, however, request a hearing by the MSPB after the Postal Service has rendered a decision on your EEO complaint or after 120 calendar days from filing your complaint, whichever occurs first. If you appeal to the MSPB, your appeal should state whether you do or do not wish a hearing and you should furnish me a copy of your appeal.

If you appeal this action to the MSPB, you will remain on the rolls, but in a nonpay, nonduty status after the effective date of this action, until disposition of your case has been reached either by settlement or through exhaustion of your administrative remedies.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD. The extent of documentation necessary to support your back pay claim is explained on the attached Notification of Employee's Obligation to Mitigate Damages Letter.

If you appeal this action through the appeals procedures set forth in part 650 of the Employee and Labor Relations Manual, you and/or your representative, if he or she is a U.S. Postal Service employee, shall be afforded a reasonable amount of official time for preparation of your case if you and/or your representative are otherwise in a duty status.

We are enclosing Standard Form 8, which gives instructions regarding unemployment compensation.

A copy of this letter is being sent to your home address by ordinary mail.

Arthur Rosenberg

Attachments:   MSPB Regulations
               MSPB Appeal Form
               Notification of Employee's Obligation

-3-

regulations (29 CFR Section 1614.302 through 1614.310). You are not entitled to a hearing by the Equal Employment Opportunity Commission (EEOC). You may, however, request a hearing by the MSPB after the Postal Service has rendered a decision on your EEO complaint or after 120 calendar days from filing your complaint, whichever occurs first. If you appeal to the MSPB, your appeal should state whether you do or do not wish a hearing and you should furnish me a copy of your appeal.

If you appeal this action to the MSPB, you will remain on the rolls, but in a nonpay, nonduty status after the effective date of this action, until disposition of your case has been reached either by settlement or through exhaustion of your administrative remedies.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD. The extent of documentation necessary to support your back pay claim is explained on the attached Notification of Employee's Obligation to Mitigate Damages letter.

If you appeal this action through the appeals procedures set forth in part 650 of the Employee and Labor Relations Manual, you and/or your representative, if he or she is a U.S. Postal Service employee, shall be afforded a reasonable amount of official time for preparation of your case if you and/or your representative are otherwise in a duty status.

We are enclosing Standard Form 8, which gives instructions regarding unemployment compensation.

A copy of this letter is being sent to your home address by ordinary mail.

Arthur Rosenberg

Attachments:   MSPB Regulations
               MSPB Appeal Form
               Notification of Employee's Obligation



## PRIORITY MAIL
### UNITED STATES POSTAL SERVICE

## Flat Rate
## Mailing Envelope
*For Domestic and International Use*

Visit us at usps.com

190
0000305.600 APR 29 09
RECEIVED

MAY 0 1 2009

EEOC/OFO

**INTERNATIONAL RESTRICTIONS:**
**LIMITATIONS ON CONTENT:**
When using Priority Mail, restrictions apply for cash
or cash equivalents and hazardous materials may be
prohibited.

**WHEN USED INTERNATIONALLY 4 POUND**
**WEIGHT LIMIT APPLIES.**
Additional country-speci
may apply. See Internati
country pages for details

**CUSTOMS:**
For international use affi
2976.

*HOW TO USE*



1. Complete
Type or Pri
and address
block area



2. Payment Is
Affix postage or meter strip to area
indicated in upper right hand corner.

3. Acceptance
Bring your Flat Rate Priority Mail
envelope to a Post Office, or to schedule
pickup of your postage paid envelopes
visit us at usps.com/pickup.

We Deliver!

**United States Postal Service**
**DELIVERY CONFIRMATION™**



0304 2040 0000 5632 9990

From/Expéditeur:

**HARTLEY DAVID ALLEY**
ATTORNEY AT LAW
23107 FAIRWAY BRIDGE
SAN ANTONIO, TX 78258

To/Destinataire:

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013

Country of Destination/Pays de destination:



Cradle to Cradle Certification is awarded to products that pursue
an innovative vision of ecologically-intelligent design that eliminates
the concept of waste. This USPS® packaging has been certified
for its material content, recyclability and manufacturing characteristics.

Please recycle.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail.
Misuse may be a violation of federal law. This packaging is not for resale. EP14F of JULY 2007 © U.S. POSTAL SERVICE





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

*Recd 3/27/09 → 4/26/09*

*1st Denial*

Mable Anthony,
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.

Appeal No. 0120090560

Agency No. 4C720011508

<u>DECISION</u>

Complainant filed a timely appeal with this Commission from the agency's decision dated November 4, 2008, dismissing her complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.* Upon review, the Commission finds that complainant's complaint was properly dismissed pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim.

In a complaint dated October 27, 2008, complainant alleged that she was subjected to discrimination on the basis of reprisal for prior protected EEO activity under Title VII of the Civil Rights Act of 1964 when from September 15-18, 2008, she was harassed, threatened and intimidated; her character was defamed; the agency failed to investigate her claims of hostile work environment that occurred during this period; and she was placed on administrative leave without just cause.

Briefly, complainant was a Postmaster in Wynne, Arkansas. She was upset because the agency decided to do a Function 4 and Function 2 audit at her facility during the time in question. The facility had not been audited since 2005. The audit found several discrepancies which resulted in the audit becoming an investigation, and complainant was placed on administrative leave.

The Commission finds that the complaint fails to state a claim under the EEOC regulations because complainant failed to show that she suffered harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. *See Diaz v. Department of the Air Force*, EEOC Request No. 05931049 (April 21, 1994). Further, the Commission

finds that complainant has failed to state a viable claim of reprisal.   Accordingly, the agency's final decision dismissing complainant's complaint is affirmed.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M1208)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999).   All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 77960, Washington, DC 20013.   In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period.   *See* 29 C.F.R. § 1614.604.   The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.   Any supporting documentation must be submitted with your request for reconsideration.   The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.   *See* 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0408)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.   If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court.   "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

3                                          0120090560

## RIGHT TO REQUEST COUNSEL (Z1008)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney with the Court does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

MAR 2 4 2009

Date

4                                                    0120090560

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Mable Anthony
909 Hwy 1, North
Marianna, AR  72360

Hartley D. Alley, ESQ
23107 Fairway Bridge
San Antonio, TX  78258

U.S. Postal Service (Eastern Area Ofc.)
NEEOISO - Appeals
U.S. Postal Service
PO Box 21979
Tampa, FL  33622-1979

MAR 2 4 2009
_____
Date

_____
Equal Opportunity Assistant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013



Mable Anthony,
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.



Request No. 0520090409

Appeal No. 0120090560
Agency No. 4C-720-0115-08

### DENIAL

Complainant timely requested reconsideration of the decision in *Mable Anthony v. United States Postal Service*, EEOC Appeal No. 0120090560 (March 24, 2009). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

In the request to reconsider, complainant's attorney argues that in regard to the appeal from the agency's final decision, on March 17, 2009, complainant filed a Notice of Intent to Submit a Reply to Agency Response, indicating the intent to submit a reply on or by April 6, 2009. Complainant's attorney noted that the Commission did not respond to the notice or await for complainant's reply; rather, on March 24, 2009, the Commission issued the prior decision that is the subject of the instant reconsideration request. Complainant's attorney argues, therefore that because the Commission did not wait for the reply to consider complainant's evidence in response to the agency's response, complainant was left "with no avenue of review save seeking consideration."

However, based on our review of the ensuing argument raised by complainant's attorney in the reconsideration request, the Commission determines that these arguments do not have an

2                                              0520090409

impact on our earlier conclusion.  The agency properly dismissed the instant formal complaint for failure to state a claim.

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 0120090560 remains the Commission's decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0408)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1008)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  **The grant or denial of the request is within the sole discretion of the Court.**  Filing a request for an attorney with the Court does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

JUN  8 2009          *Received*
                     *June 11, 2009?*
Date

3                                    0520090409

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Mable Anthony
909 Hwy 1, North
Marianna, AR  72360

Hartley D. Alley, Esq
23107 Fairway Bridge
San Antonio, TX  78258

U.S. Postal Service (Eastern Area Ofc.)
NEEOISO - Appeals
U.S. Postal Service
PO Box 21979
Tampa, FL  33622-1979

**JUN    8 2009**
_____
Date

_____
Equal Opportunity Assistant